## J. D. TREADWAY ET AL. v. EDWARD EASTBURN.

### (Case No. 4289.)

1. JUDGMENT — COLLATERAL PROCEEDING.— In a collateral attack upon the judgment of a domestic court of record of general jurisdiction, the nullity of the judgment for want of jurisdiction over the person of the defendant was insisted on, because the return upon the writ of citation by publication showed that the alleged publication, as therein recited, could not have been made. The judgment, however, recited that the defendant failed to appear and answer, "but wholly made default, *although* duly cited with process," etc. *Held,*

(1) To determine whether the record shows affirmatively that there was proper service, the whole of it must be considered together.

(2) The recital in the judgment, which was the last act of the court in the case, reciting that the defendant was "duly cited with process," imports in a collateral proceeding absolute verity.

APPEAL from Lamar. Tried below before the Hon. R. R. Gaines.

Trespass to try title brought by Edward Eastburn, for one thousand four hundred and ninety-six acres of land, for $2,000 damages, and $500 per annum rents. Defendants A. Y. and W. W. Gunter answered April 1, 1880, and, after their general answer, set out that on April 18, 1867, judgment was rendered in the district court of Lamar county, in case No. 1485 (Sampson Fulsom *v.* Edward Eastburn) for $2,158.80, and foreclosing attachment lien upon the lands in controversy, and decreeing them to be sold to satisfy the debt; that the lands were sold by the sheriff in compliance with the decree, June 4, 1867, a regular legal sale day, and were purchased by Sampson Fulsom (at $2,281), who gave a deed of trust thereon to W. H. H. Long, trustee, July 14, 1867, to secure a debt of $1,259.15; that Long sold in compliance with the deed of trust February 19, 1868, and it was purchased by defendants A. Y. and W. W. Gunter, who claimed to be *bona fide* purchasers without notice; that after this purchase the case of Fulsom *v.* Eastburn was taken to the supreme court by writ of error, and the case was stricken from the docket; that Gunter sold to defendant Treadway November 28, 1876, who afterwards sold a portion of his purchase to defendant Harper; also pleas of three, five and ten years' limitation. Defendants Harper and Treadway pleaded substantially the same facts and set up their improvements in good faith.

Plaintiff, by supplemental petition, set up that the case of Fulsom *v.* Eastburn was reversed and dismissed. The court rendered judgment for plaintiff for the land, and against defendant Harper for $100 rents, with judgment in favor of Harper and against plaintiff for $720 improvements made in good faith, and judgment in favor

of Harper against defendant Treadway for $565, and of purchase
money paid by him, and judgment in favor of Treadway and
against A. Y. and W. W. Gunter for $1,083.70, amount of purchase
money paid by him, and for $855, the value of improvements placed
by Treadway on the land, and for costs.

It was proved by the depositions of A. Y. and W. W. Gunter
that they purchased in good faith without notice, actual or con-
structive, of plaintiff's claim before the writ of error was sued out,
and paid $665, which was the value of the land at the time, believ-
ing that their title was good, and that they would not have pur-
chased if they had known of any defect in the title.

2. Judgment by default in case of Sampson Fulsom v. Edward
Eastburn, April 13, 1867, reciting "that defendant Edward East-
burn having failed to appear and answer, but wholly made default,
although *duly served with process*," etc., awarding a writ of inquiry;
also final judgment April 18, 1867, for $2,158.80, and adjudging the
land in controversy which had previously been attached to be sold
to satisfy the debt.

3. Order of sale, regular under the judgment, and return of the
sheriff thereon showing the sale of the land to Sampson Fulsom.

4. Deed of the sheriff to Fulsom June 4, 1867, and recorded in
Lamar county June 17, 1867.

5. Deed of trust by Sampson Fulsom to W. H. H. Long, trustee,
dated July 14, 1867, to secure $1,259.15, due October 27, 1867, in
usual form, with power of sale, acknowledged and recorded in
Lamar county on same day of its execution.

6. Deed by W. H. H. Long, trustee, in full compliance with the
terms of the deed of trust to A. Y. and W. W. Gunter for the land
in controversy, February 19, 1868, for $665; deed regular, and re-
corded in Lamar county on the same day.

7. Power of attorney from W. W. Gunter to A. Y. Gunter, in
usual form, authorizing him to sell and make deed to the land in
controversy, dated September, 1876, duly recorded.

8. Deed from A. Y. and W. W. Gunter to J. D. Treadway for
the land in controversy, November 28, 1876, in usual form — W. W.
Gunter acting by his agent, A. Y. Gunter.

9. J. D. Treadway to John Harper, by deed August 25, 1877, for
part of the land.

10. Testimony of J. D. Treadway showing that he bought of the
Gunters in good faith, took possession of the land at once, and
made permanent and valuable improvements thereon worth $855
before this suit was brought.

11. Petition for writ of error by Edward Eastburn, May 18, 1868.

12. Transcript from supreme court showing said case " stricken from the docket, at the cost of defendant, April 29, 1869; " another transcript from same court showing cause reversed and dismissed.

The facts connected with the citation by publication appear in the opinion.

*Hale & Scott*, for appellants.

*Maxey, Lightfoot & Denton*, also for appellants.

*W. B. Wright*, for appellee.

I. Judgments by publication are construed strictly, and a defective service or want of strict legal service by publication renders the judgment void, and not voidable or erroneous. Blossman *v.* Letchford, 17 Tex., 647; Allen *v.* Wyser, 29 Tex., 150; Withers *v.* Patterson, 27 Tex., 491; Rorer on Judicial Sales, sec. 733; Galpin *v.* Page, 18 Wall., 350.

II. The record or papers of a case involving a jurisdictional fact may be looked to in determining said fact of jurisdiction, as presumptions of jurisdiction are indulged in the absence of proof, not against proof. McCoy *v.* Crawford, 9 Tex., 153; Withers *v.* Patterson, 27 Tex., 491; Galpin *v.* Page, 18 Wall., 350; Rorer on Judicial Sales, 255, sec. 733, and authorities there cited.

· BONNER, ASSOCIATE JUSTICE.— All the defendants below, appellants in this court, claim title to the land in controversy under the sale by virtue of the judgment of the district court enforcing the attachment lien in the original suit of Sampson Fulsom *v.* Edward Eastburn, appellee.

The record shows that at least two of these defendants, A. Y. and W. W. Gunter, were purchasers in good faith for a valuable consideration, before any proceedings were taken by appellee Eastburn to avoid that judgment, and when it was in full force and effect. These defendants were strangers to that suit, and unless the judgment rendered therein was absolutely void, their rights would not be affected by its subsequent reversal. Mosely *v.* Gaines, 10 Tex., 396; Guiteau *v.* Wisely, 47 Ill., 433.

The other defendants below to this suit, Treadway and Harper, were also strangers to the original suit of Fulsom *v.* Eastburn, and were purchasers for value from the Gunters, and hence would be protected also if the latter should be. 1 Story's Eq. Jur., 409.

The court below seems to have found that they, too, were purchasers in good faith.

It does not appear that the supreme court reversed the judgment in the original suit of Fulsom v. Eastburn, and dismissed that suit for the want of jurisdiction of the person by reason of defective service, and it would have been improper to have dismissed the suit on that ground, but it should have been reversed and remanded. We infer from the brief of appellee Eastburn, and the evidence offered by appellants on the trial below, and which was rejected, as shown by bill of exception, that the judgment of the supreme court was based upon the fact that the cause of action arose upon a Confederate money transaction, which, under the decisions of this court at that time, was held to be illegal, and would not support an action.

As thus presented, this cause will be considered as an ordinary one, in which it is sought in a collateral proceeding to impeach, on the ground of the want of jurisdiction over the person of the defendant, the judgment of a domestic court of record of general jurisdiction.

Such question in a collateral proceeding should be tried by the record itself. Freeman on Judgments, §§ 132–4; Carpenter v. Oakland, 30 Cal., 439; Murchison v. White, 54 Tex., 78.

It is contended by appellee Eastburn, that the record in the original suit against him in favor of Fulsom, under which the land was sold, shows affirmatively this want of jurisdiction, and hence that the judgment by default was null and void, and that this could be shown even in a collateral proceeding.

The writ of citation was in the usual form by publication, and was dated July 24, 1866.

The return of the sheriff thereon was as follows: "Came to hand July 30, 1866, and executed by publishing in the 'Paris Press,' a newspaper published in the county of Lamar, state of Texas, for successive four weeks previous to return day; this the 25th day of July, 1866. W. A. Cox, Sheriff of Lamar County."

The defect in the proceedings arises upon this return, as it is manifest from its date, that, by mistake or otherwise, the alleged publication as therein recited could not then have been made. The subsequent judgment, however, as shown by the record, contains the following recital: "This day came the plaintiff by his attorney, and the said defendant Edward Eastburn failed to appear and answer, but wholly made default, although duly served with process," etc.

It does not become necessary to decide under our statute, which provides that no judgment shall be rendered in suits by attachment unless the citation or summons has been served in the ordinary mode

or by publication, whether the levy of the attachment upon the land in controversy affected the question of jurisdiction. That it would not give jurisdiction seems to be the effect of the decision in Wilson *v.* Zeigler, 44 Tex., 660.

It is a familiar rule, which, though it may work a hardship in a particular case, is founded and sustained upon reasons of great public policy, that all reasonable presumptions must be indulged in favor of the validity of domestic courts of record having general jurisdiction.

If the uncontradicted recitals in the record show *affirmatively* that the court did not have jurisdiction over the subject matter, or that the jurisdiction over the person did not attach, then a presumption to the contrary will not be indulged. Otherwise the presumption in favor of the jurisdiction of the court would prevail in every case, and the mere rendition of the judgment would of itself "import absolute verity." To thus hold in cases where the record shows affirmatively want of jurisdiction, would itself impeach the record, and thus violate the very rule sought to be invoked — that the record cannot in a collateral proceeding be contradicted.

To determine, however, whether the record shows affirmatively that there has been proper service, the whole of it should be taken together.

When thus considered, if that portion which relates to this question shows affirmatively such character of service as is not authorized by law, or such defective service that a judgment by default rendered thereon would be void, and not voidable only, and the remainder of the record is silent upon this subject, not showing any finding of the court from which it may be inferred that there was other service or an appearance, then this would be a case in which it affirmatively appears that the jurisdiction of the court had not attached. Clark *v.* Thompson, 47 Ill., 25; Freeman on Judgments, § 125.

If, however, other parts of the record, and particularly the judgment, which is the final act of the court, entered upon full examination and consideration of all the necessary facts, should, as in the case now before us, recite the due service of process or other facts which would give the court jurisdiction of the person, then this would be a case in which it would affirmatively appear that the jurisdiction had in fact attached, and the general rule would apply, that in a collateral proceeding this recital in the record imports absolute verity. This doctrine is supported by the following among other authorities: Freeman on Judgments, § 130; Hahn *v.* Kelley,

34 Cal., 407; Quincy v. Porter, 37 Cal., 458; Riley v. Lancaster, 39 Cal., 354; Drake v. Durenick, 45 Cal., 455; Gammell v. Rice, 13 Maine, 400.

In the elaborate opinion in the above case of Hahn v. Kelley, where the alleged want of jurisdiction arose upon a question of defective service by publication, it is said: "So in the case of service by publication — if the affidavit of the printer states that the summons was published one month, and yet the court in its judgment states that it was published three, or that service has been had upon the defendant, it will be presumed that other proof than that contained in the judgment roll was made, for not to so presume would be to deny to the record that absolute verity which must be accorded to it." 34 Cal., 408.

Again it is said: "But the remainder of the judgment roll in the case now under consideration is not silent upon the subject. The judgment itself states that service has been made according to law and the order of the judge of this court. In view of this distinct statement as to a matter which the court was as competent to determine as any other matter involved in the case, we would be bound to presume, as already shown, that proof of publication by the proper person was in fact made, notwithstanding that part of the roll denominated 'proof of service' showed a state of facts from which a want of jurisdiction would be apparent." 34 Cal., 419.

It is scarcely deemed necessary to say that a much more rigid rule on this subject obtains in the case of a collateral attack upon the judgment of a domestic court of general jurisdiction, than in a direct proceeding to set aside. Blossman v. Letchford, 17 Tex., 647; Burdett v. Howth, 45 Tex., 465; Fitch v. Boyer, 51 Tex., 344.

As said in Coit v. Haven: "And it is so necessary that confidence should be reposed in courts of high character, as well as in the records of such courts, that on the whole, and in view of all the considerations affecting the subject, it is the only safe rule to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than to leave them open to be attacked in every way and on all occasions. Being domestic judgments, they can, if erroneous, be reviewed by proceedings instituted directly for the purpose, and reversed on error, or by a new trial, and if the danger is imminent and special, relief can be temporarily, if not finally, obtained by application to a court of equity. . . . Any other rule with regard to judgments of such courts would be attended in its application with very great embarrassment, and would be very dangerous in its general operation. The general good

clearly requires, and has therefore established the rule, that domestic judgments of courts of general jurisdiction cannot be attacked collaterally." 30 Conn., 199; Cullen v. Ellison, 13 Ohio St., 454.

Especially should this be the rule in a case like the present, when the rights of strangers have vested by virtue of the judgment and sales had thereunder.

We are not advised of the particular ground upon which the judgment of the court below was based, but we presume it must have been upon the assumption that the court, in the former case of Fulsom v. Eastburn, did not have jurisdiction, by reason of the defective return of the sheriff on the citation, as shown in the record.

On principle, and in the light of the above authorities, we are of opinion that there was error in the judgment below, for which it must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 3, 1881.]