## H. T. LUTCHER ET AL. V. ETTA ALLEN ET AL.

### Decided May 2, 1906.

#### 1.—Judgment—Collateral Attack—Recitals—Record.

In a suit of trespass to try title the defendants claimed the land under and by virtue of a judgment *in personam* and by default against the ancestor of the plaintiffs, and an execution sale thereunder. The defendant in that suit was a nonresident and was served by publication. The judgment recited that "the defendant, though citation by publication has been duly and legally made upon him, failed to appear and answer in this behalf, but wholly made default." Held, the court properly permitted the plaintiffs for the purpose of showing the nullity of said judgment to introduce in evidence the petition in that case, wherein it was alleged that the defendant was a nonresident of this State and a resident of Louisiana; also the citation in which the sheriff was commanded to summon the defendant, who resided beyond the State, by publication; and the sheriff's return which showed citation by publication.

#### 2.—Same.

When the judgment sets out the particular kind of citation made on a defendant, the record may be consulted to support or destroy the recital in the judgment.

#### 3.—Record, Meaning of.

By the record, or judgment roll, which may be consulted in an attack upon a judgment, is meant, at least, the process filed in the suit, the judgment itself, and the pleadings of the parties.

#### 4.—Limitation—Payment of Taxes.

The payment of taxes for any length of time would not, by itself, be sufficient to show such possession as to support a plea of limitation, nor even to raise a presumption of such possession.

#### 5.—Judgment, When not an Estoppel.

Some years before the filing of this suit certain other of the heirs of the common ancestor brought suit for the same land, and judgment was rendered against them. Held, because the parties to this suit were neither parties nor privies to that suit, the judgment therein rendered was in no way binding on them.

#### 6.—Void Judgment—Lapse of Time.

If a judgment is void at the time of its rendition no lapse of time, however great, would render it valid and binding.

#### ON REHEARING.

#### 7.—Judgment—Collateral Attack.

Opinion reiterated. If the contention was correct that in a collateral attack on a personal judgment against a nonresident, only the recitals in the judgment could be looked to in ascertaining the residence of the defendant, then in but few cases could it be shown that the court had no jurisdiction and the judgment was a nullity, and this, although the averments of the petition, the recitals in the process, the officer's return, and other parts of the record showed that the defendant was a nonresident, and negatived the possibility of any but constructive service.

Appeal from the District Court of Newton County: Tried below before Hon. W. B. Powell.

*Holland & Holland*, for appellants.—A recitation of legal service of

citation in a judgment of a domestic court of general and competent jurisdiction, is conclusive as to such service and the fact of such service being had or its validity can not be questioned in a collateral proceeding. Treadway v. Eastburn, 57 Texas, 209; Heck v. Martin, 75 Texas, 472; Sloan v. Thompson, 4 Texas Civ. App., 425; Moore v. Perry, 35 S. W. Rep., 840; Gillon v. Wear, 28 S. W. Rep., 1015; Cooper v. Mayfield, 57 S. W. Rep., 50; Davis v. Robinson, 70 Texas, 397; Graham v. East Texas, etc., Co., 50 S. W. Rep., 580; Martin v. Burns, 80 Texas, 679; Buse v. Bartlett, 21 S. W. Rep., 53; Iams v. Root, 55 S. W. Rep., 413; Hardy v. Beaty, 84 Texas, 567; Fowler v. Simpson, 79 Texas, 615 .

A judgment of a domestic court of competent jurisdiction reciting valid service by publication imports absolute verity and can not be collaterally attacked. Hardy v. Beaty, 84 Texas, 567; Stewart v. Anderson, 70 Texas, 590; Buse v. Bartlett, 21 S. W. Rep., 53.

The court erred in his fourth conclusion of law in holding that no title would pass to land by levy and sale thereof as the property of Oliver Sutton in Newton County by virtue of an execution issued against O. S. Sutton, because the middle initial of a man's name is not recognized in law and men of the same name are presumed to be the same man. English v. State, 30 Texas Crim. App., 471; McDonald v. Morgan, 27 Texas, 506.

Where a party to a judgment against him, with full knowledge of such judgment employs counsel and makes an effort to set it aside and takes active steps with reference thereto and afterwards permits such judgment to remain undisturbed for thirty years and other parties to acquire valuable property rights thereunder, he and his heirs are estopped to deny the validity of such judgment. Bomar v. Ft. Worth B. & L. Assn., 49 S. W. Rep., 914; Cleveland v. Heidenheimer, 44 S. W. Rep., 554; Bonner & Eddy, Receivers, v. Green, 6 Texas Civ. App., 99; Jackson v. West, 54 S. W. Rep., 298.

The payment of taxes is prima facie evidence of possession and where it has continued for the required length of time, in the absence of any other testimony weakening the prima facie case made, it will support the plea of limitation. Jackson v. Deslonde, 1 Posey U. C., 691; Glasscock v. Hughes, 55 Texas, 476.

Acquiescence by one joint tenant in a judgment rendered in a cause brought by the others against one adversely interested for ten years estops such party from claiming adversely to the judgment and is a ratification thereof. Musselman v. Strohl, 83 Texas, 480.

R. W. Caskey being the next friend of the plaintiff Etta Allen, she being a minor and being raised by him, is entitled to be deemed her full representative in a suit brought by him for the recovery of an interest in land claimed by her together with the other joint claimants against an adverse claimant thereof, insofar as to bind her interest under the decree rendered, although she is not a party in name to the suit. Miller v. Foster, 12 S. W. Rep., 122; Gunter v. Fox, 51 Texas, 383; McGee v. Romatka, 92 Texas, 42.

The court erred in holding that the judgment in the suit of Moody & Jamison against Sutton, introduced in evidence could be collaterally attacked and the authority and jurisdiction of the court to render same questioned in this cause, because said judgment was more than thirty

years old and power to render same would be presumed from lapse of time. Garner v. Lasker, 71 Texas, 436; Johnson v. Shaw, 41 Texas, 434; Johnson v. Timmons, 50 Texas, 534.

*W. D. Gordon,* for appellee.

FLY, Associate Justice.—This is an action of trespass to try title instituted by appellee and others against appellants. The parties claimed the land through a common source, Oliver Sutton, appellants through a sheriff's deed to the land, by virtue of an execution issued, in a case of Moody & Jamison v. O. S. Sutton, out of the District Court of Galveston County in 1875; and appellees claimed the land as the heirs of Oliver Sutton. The cause was tried by the court, without the aid of a jury, and it was adjudged that a portion of the plaintiffs be allowed to take a non-suit and that the appellees, Etta Allen and her husband, G. C. Allen, and W. D. Gordon and B. F. Larkin for himself, and as next friend of the minor heirs of Jennie Larkin, deceased, recover of appellants as follows: Etta Allen one-half of a certain 287 acres of land, and W. D. Gordon the other half, and B. F. Larkin for himself and the minors, one-fifth of a certain 28 acres of land.

The court found the following facts, which we adopt:

"1st. I find that Richard Williams sold and conveyed the land in controversy to J. R. Williams in 1848 and that J. R. Williams sold and conveyed said land to Oliver Sutton in the year 1860.

"2d. I find that Oliver Sutton and Henrietta Sutton were husband and wife. That Henrietta Sutton died in 1867 and Oliver Sutton died in 1883 in the State of Louisiana. I find from the partition suit between the heirs of Oliver Sutton and Henrietta Sutton, that they left surviving them eleven children, and by admission of counsel in case, I find that one of these children, namely, Mary, was not the child of Oliver Sutton, but was a child of Henrietta Sutton.

"3d. I find that as Henrietta Sutton died in 1867 and left surviving her ten children by Oliver Sutton, that they were husband and wife in 1860, when the land in controversy was conveyed to Oliver Sutton.

"4th. I find that W. S. Sutton was one of the children and heirs of said Oliver Sutton and wife; that said W. S. Sutton is dead and left surviving him as his only heir one child, Etta Sutton, who is the wife of G. C. Allen. I find that Oliver Sutton and wife left surviving them a daughter Elizabeth, now deceased, who left as her heirs five children, one of whom was Jennie Larkin, now deceased, who left surviving her, her husband, B. F. Larkin, and two minor children, ———Larkin and ———Larkin.

"5th. I find that in 1874 Moody and Jamison brought a personal action in the District Court of Galveston County, Texas, against one O. S. Sutton, alleging that he was a resident citizen of the State of Lousiana, residing in that State, and claiming a debt due by said O. S. Sutton on an account of $202 and asking that he be cited by publication to answer the same at the next term, being the fourth Monday in November, 1874, and that in pursuance thereof, citation by publication was regularly made for four weeks beginning August 1, 1874, in a newspaper published in Galveston County, citing said O. S. Sutton to

answer said suit, and at the next term of said court, after said service by publication was complete, a judgment by default was taken in said court against O. S. Sutton for $202 in favor of said Moody and Jamison.

"6th. I find that on the —— day of ——, 1875, an execution issued out of the District Court of Galveston County, by virtue of said judgment against O. S. Sutton, and that the land in controversy was, by virtue of said execution and judgment, levied upon and sold as the property of Oliver Sutton, and that said Moody and Jamison purchased said land under said execution sale for the sum of $200, and that the land sold amounted to 2,293 acres.

"7th. I find that during the year 1872 and for six years thereafter Oliver Sutton was a resident citizen of the State of Lousiana. That about the year 1878 he came into Texas and went west on a prospecting tour and afterwards returned to Louisiana and died.

"8th. I find that Oliver Sutton had no middle name and was not known or called O. S. Sutton.

"9th. I find that some time before said execution sale of said land, E. A. Cheatham and T. W. Ford, attorneys at law, presented an application to the district judge of Galveston County, praying on behalf of Oliver Sutton for a writ of injunction to restrain said execution sale, that the judge refused the writ, and that it was never filed, nor was any further action taken. The court from the facts is unable to say whether Oliver Sutton or R. O. Sutton or any one of his other sons employed said counsel to enjoin said sale.

"10th. I find that in 1887 the heirs of Henrietta and Oliver Sutton and their representatives brought a partition suit and partitioned the 2,293 acres of land on the R. Williams survey in controversy among themselves, including other lands of said estate, and that said 2,293 acres was partitioned and set apart to eight of said heirs and that three of them got their interest in the estate out of other tracts of land.

"11th. I find that the defendants Lutcher & Moore have paid the taxes on said land since 1894.

"12th. I find that the defendants deraign their title to said land from Oliver Sutton through a sheriff's deed made by C. A. Hancock, sheriff of Newton County, Texas, by virtue of an execution issued out of the District Court of Galveston County, Texas, against O. S. Sutton on a judgment rendered *in personam* obtained in said court against O. S. Sutton when Oliver Sutton was a resident citizen of the State of Lousiana.

"13th. I find that part of the heirs of Oliver Sutton and Henrietta Sutton brought suit in 1894 against E. S. Jamison for the land in controversy and judgment was rendered for defendant against said heirs who were parties to said suit, but that plaintiffs, to whom judgment is given in this cause, were not parties nor privies to said suit and judgment."

The judgment obtained by Moody & Jamison in Galveston County, Texas, against O. S. Sutton was by default and it is recited therein that "the defendant, though citation by publication has been duly and legally made upon him, failed to appear and answer in this behalf, but wholly made default." The court permitted appellees to introduce in evidence the petition in the case wherein it was alleged that O. S.

Sutton was "a nonresident of said State and resides in the State of Lousiana," and the citation, in which the sheriff was commanded to summon O. S. Sutton who resided beyond the State, by publication, and the return which showed citation by publication. Through the first, second and third assignments of error appellants attack the action of the court in permitting the petition and citation to be used in evidence as well as the testimony of Mrs. Clegg to the effect that O. S. Sutton lived in Lousiana at the time the judgment was obtained. The grounds of objection were, that an attempt was being made to collaterally attack a judgment, thirty years old by evidence aliunde the record.

So far as the petition, citation and return are concerned the court did not err in permitting them to be read in evidence. While it is true that all reasonable presumptions must be indulged in favor of the judgments of domestic courts, and that they can not be collaterally attacked when reciting valid service or when silent on the subject, yet it has never been held that they can not be attacked in a collateral proceeding if the judgment itself or the record shows that the court did not have jurisdiction. A void judgment can be attacked at any time and place. In the case of Treadway v. Eastburn, 57 Texas, 209, it is stated: "To determine, however, whether the record shows affirmatively that there has been proper service, the whole of it should be taken together. When thus considered, if that portion which relates to this question shows affirmatively such character of service as is not authorized by law, or such defective service that a judgment by default thereon would be void, and not voidable only, and the remainder of the record is silent upon this subject not showing any finding of the court from which it may be inferred that there was other service or an appearance, then this would be a case in which it affirmatively appears that the jurisdiction of the court had not attached." The rule, as stated, has never been questioned in Texas, but has been often approved. (Heck v. Martin, 75 Texas, 469; Fowler v. Simpson, 79 Texas, 611; Martin v. Burns, 80 Texas, 676; Hardy v. Beaty, 84 Texas, 562; Dunn v. Taylor, by this court and not yet published.)

In the cited case of Martin v. Burns, which is relied on by appellants, it is said: "Where the case is within the jurisdiction of the court and no fact appears affirmatively in the record sufficient to defeat the jurisdiction, evidence aliunde, even where the judgment is silent as to the process or its service, will not be heard to contradict the presumption of regularity or to establish a fact outside of the record for the purpose of showing that jurisdiction over the former did not in fact attach and thus impeach the judgment, if the judgment itself finds and recites a valid notice or citation and service that controls the balance of the record, otherwise if it recites an invalid citation, or names the precise character thereof." In other words that case holds that if the judgment in this case had recited that O. S. Sutton was duly and legally cited the balance of the record could not be consulted as to service, but if the judgment had been silent as to service, or if it recited an invalid citation, or the kind of citation, then the record could be used to support or destroy the judgment. While not committing this court to all the propositions made in the quotation, we think the last part of it is well supported by authority. In the case of Fowler v. Simpson, above cited,

the court went further and held that a judgment which recited due service was invalidated by the citation which showed that there had not been due service, the record excluding any presumption that other service was obtained.

It may be taken as established by the decisions of Texas, that when the judgment sets out the particular kind of citation made on a defendant that the record may be consulted to support or destroy the recital in the judgment. Then the question recurs what is the record that can be consulted? In the case of Dunn v. Taylor, above cited, this court said: "By the record or judgment roll, referred to as being proper to be considered in determining the validity of a judgment, is meant at least the process filed in the suit, the judgment itself and the pleadings of the parties." (Freeman Judg., sec. 75 et seq.; Black Judg., sec. 124.) In the case of Stegall v. Huff, 54 Texas, 193, the affidavit for citation was used to contradict the recitals in a judgment, and the Supreme Court affirmed the judgment. So in Fowler v. Simpson, herein cited, the citation was used, in a collateral attack, to contradict the recitals in the judgment.

We conclude that the petition and citation and return were properly admitted, but the evidence of Mrs. Clegg should have been excluded. The evidence was cumulative, however, of that shown by the allegations in the petition and is not ground for reversal, the cause having been tried without a jury. (Hill v. Smith, 6 Texas Civ. App., 312, 25 S. W. Rep., 1079.) Appellants are in no position to complain of the testimony of Mrs. Clegg, however, because they proved by T. T. Howard that Oliver Sutton moved to Louisiana in 1872, and returned to Texas in 1878, and then went back to Louisiana in 1880.

The judgment recited citation by publication, and the petition showed that the defendant therein resided in the State of Louisiana, and the process showed that he resided outside the State, and as the judgment was rendered at the first term of the court that it could have been rendered in a case where the defendant was cited by publication, and as there could have been no other process, it follows that the court had no jurisdiction to render the judgment and it was null and void. (Martin v. Burns, 80 Texas, 676; Pennoyer v. Neff, 95 U. S., 714.)

We think the court was justified in finding that Oliver Sutton and Henrietta Sutton were man and wife in 1860, when he acquired the land. It was immaterial, however, whether they were married in 1860 or not. They were man and wife when she died and the rights of appellees are not affected, whether the marriage existed in 1860 or not.

There is no merit in the sixth assignment of error and it is immaterial whether the court erred in concluding that Oliver Sutton was not bound by a judgment against O. S. Sutton. The judgment was void as to O. S. Sutton and could not, therefore, be valid as to Oliver Sutton. There was no testimony to show that O. S. Sutton was Oliver Sutton.

It was in evidence that an application for injunction, to restrain the sale of Oliver Sutton's land under the judgment against O. S. Sutton, was presented by a firm of lawyers to a district judge and the application was refused. The grounds of the application were that Oliver Sutton did not owe the debt for which the judgment was recovered, and had

not been served with citation and was a non-resident of Texas. There is certainly nothing in those facts that would estop the heirs of Oliver Sutton. No suit was instituted to set aside the judgment and the application for injunction was not filed. It was simply presented to the judge and was refused. It would take more than that to vitalize a void judgment.

There was no evidence of possession of the land by appellants and had it been conclusively shown, as it was not, that the taxes for eleven years had been paid on the land by appellants that fact would not raise a presumption of possession of the land. It is a fact known to every one that in the past thousands of acres of land in Texas have not been occupied by those paying taxes on them and the payment of taxes would not by itself be sufficient to show such possession as to support a plea of limitation.

Appellants claim that O. S. Sutton was the same with Oliver Sutton, and their title is through a sheriff's deed made to Oliver Sutton's land, and the latter was the ancestor of appellees, from whom they deraign title. It may be true, as found by the court that Oliver Sutton and O. S. Sutton are not the same persons, but that did not alter the fact that both parties are claiming from a common source, Oliver Sutton, because it was the land of the latter that was sold under execution.

Although appellees may have known that parties who owned a part of the Richard Williams survey had sued for their parts and failed in their suit, it is unreasonable to say that appellees are estopped from claiming their part of the land because they did not take action and show that they thought the judgment against the other owners was wrong.

Etta Allen was not a party to the suit brought by R. W. Caskey and others, and it can not be perceived on what basis the contention rests for holding her bound by such judgment. It is not shown what interest Caskey had in the land, but it does not appear that he prosecuted the suit as next friend of Etta Allen, and it will not be presumed that he did so because he was her grandfather. He was not her legal guardian and did not pretend to represent her in the suit.

Though hoary and "ancient as the sun" a void judgment would not be rendered thereby valid and binding, and the judgment of Moody and Jamison against O. S. Sutton, being void in its inception, was void thirty years thereafter.

There is no merit in any of the assignments of error and the judgment is therefore affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It must be conceded by all that a personal judgment against a non-resident by default on constructive service is void. (Pennoyer v. Neff, 95 U. S., 714; Freeman v. Alderson, 119 U. S., 185; Scott v. Streepy, 73 Texas, 547; Bartlett v. Spicer, 75 N. Y., 528; McKinney v. Collins, 88 N. Y., 216.) It must be admitted that the judgment against O. S. Sutton was a personal one and that the property sold under the judgment was not attached nor in any way brought under the jurisdiction

of the court. The only ground of disagreement therefore, must be as to whether the judgment can be attacked collaterally by showing outside of the recitals of the judgment that at the time service was obtained and the judgment rendered, O. S. Sutton was a resident of the State of Louisiana.

It is the contention, strenuously urged in the motion for rehearing, that the recitals of the judgment alone can be looked to in ascertaining whether O. S. Sutton was a resident of Texas or not at the time the personal judgment was rendered against him and at the time service by publication was obtained. It is insisted that in all the decisions to the effect that the record can be consulted, in a collateral action, to test the validity, that all that is meant is that the judgment itself can be consulted and that if it carries nothing in its recitals evidencing its nullity it can not be impeached in any manner. If that proposition be sustained scarcely any personal judgment against a non-resident could be attacked in a collateral proceeding for not one in a thousand would carry evidence of its invalidity in its recitals. Personal judgments might be obtained at any time against nonresidents and if the judgments should recite that valid and legal service had been obtained as they usually do, they could never be questioned although the averments of the petitions, the recitals in the process, the return and other parts of the record showed that the defendants were nonresidents and negatived the possibility of any but constructive service. If the rule insisted on by appellants prevailed the opinion in the case of Pennoyer v. Neff could never have been written nor perhaps those in any of the numerous cases following that decision.

This matter has been adjudicated in this State directly against the contention of appellants. (Lumber Company v. Rhoades, 17 Texas Civ. App., 665.) The court in that case said: "Another illustration of the fallacy of the assumption that because the record establishes the regularity of the process by which jurisdiction of the party within the reach of the process of the court is obtained, it also establishes the fact that the party was alive, or in other words, that he was within the jurisdiction of the court, is shown by the decisions as to the effect of judgments against persons who are nonresidents of the State where the judgments are rendered. The process of the courts of the State can not reach beyond its territorial limits and bring before them persons from other jurisdictions. But if the judgment always conclusively proves jurisdiction over parties no evidence could be heard to show that a particular party was a nonresident unless the record should affirmatively show it. This was once held by many courts as the rule applicable to domestic judgments, but it can hardly be maintained that it is now the law. (Northcraft v. Oliver, 74 Texas, 167; Pennoyer v. Neff, 95 U. S., 732; Needham v. Thayer, 147 Mass., 536; Eliot v. McCormick, 144 Mass., 10.)" A writ of error was refused in the Rhoades case, by the Supreme Court.

In the case of Needham v. Thayer, 147 Mass., 536, 18 N. E., 429, cited in the Rhoades case, it was said: "The court has no jurisdiction, and its judgment has no force, either in the State in which it was rendered, or in any other State. This being so, the judgment can not be enforced by a suit upon it; and the nonresident defendant can not

be deprived of his right to show by plea and proof, if such suit is brought, that the judgment is void, without an abridgement of his privileges and immunities, to protect which was the object of the fourteenth article of amendment. To compel him to resort to our courts by a writ of error, in which he must file a bond if he would obtain a stay of the execution, is to impose a burden upon him, and thus to abridge his privileges and immunities. It has been held in many cases that a domestic judgment can not be impeached by plea and proof in a suit brought upon it, because the proper remedy is a writ of error. . . . But while a State may make laws binding its own citizens, requiring them to resort to a writ of error, it can not so bind citizens of other States." The Rhoades case, and those cited therein, are authority for the attack on personal judgments on nonresidents not only by use of the pleadings and citations in the cases but by evidence aliunde the record.

We desire to confine the scope of the rules stated in our former opinion to cases of the character now under consideration, and there can be no doubt in such cases that the pleadings and process can be used to collaterally attack the validity of a judgment. We have never for a moment doubted the correctness of that proposition and have written this opinion on rehearing merely because appellants have insisted so strenuously that there was no authority for it. The authority is ample and the proposition is sustained by reason, common sense and justice.

The motion for rehearing is overruled.

                                                      *Overruled.*

Writ of error refused.