**Shawn T. JOHNSON, Relator,**

v.

**Honorable Solomon CASSEB, Jr., Respondent.**

**No. 04–86–00515–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 31, 1986.

---

Anne S. Johnson, San Antonio, for appellant.

Mark R. Stein, William Powers, San Antonio, for appellee.

Before CADENA C.J., and CANTU and CHAPA, JJ.

## OPINION

PER CURIAM.

The issue in this original mandamus proceeding is whether certain medical records allegedly pertaining to psychological treatment received by relator are privileged. Relator, Shawn T. Johnson, sued Steve Williamson for damages arising out of a motor vehicle collision that allegedly occurred on February 3, 1984. Relator claims to have sustained numerous physical injuries and still suffers much pain. He claims to have suffered no pain and enjoyed excellent health prior to the accident, but as a proximate result of the injuries received in the collision, he "has lost much of the pleasure in life he previously enjoyed." Relator further alleged that as a proximate result of his injuries he could no longer work a full day, and because of his pain he took medication and muscle relaxants "which precluded driving or even thinking clearly." Relator prayed for damages of $100,000.00 for "past, present and future pain and suffering and loss of pleasure in life," and $12,200.00 for past, present and future medical expenses, in addition to property damages, lost income and pre- and post-judgment interest.

In May of 1986, Williamson served written interrogatories on relator. Among other questions, relator was asked in interrogatory number 4 to identify all doctors, surgeons, health care professionals and institutions that have rendered medical treatment to him in connection with the accident. In interrogatory number 5 he was asked to identify all other doctors, surgeons, health care professionals and institutions not mentioned in the previous question that have ever treated relator. Relator filed a motion for a protective order requesting, among other relief, that he not be required to answer interrogatory number 5. Following a hearing, relator was ordered to answer that interrogatory. In his answer, relator listed, among others, Dr. Sam Sayegh, Dr. Robert Jimenez and the Charter Real Hospital.

Williamson then deposed relator. Relator testified in his deposition that he saw Dr. Sayegh for a sore throat and ear congestion, and that he saw Dr. Jimenez for counseling. He testified that he left his job selling houses because of his back pain.

Williamson then served relator with notice of his intent to depose by written questions the custodians of the medical records of Dr. Sayegh, Dr. Jimenez and Charter Real Hospital. Relator responded with a second motion for protective order which is the focus of this mandamus proceeding. He alleged in his motion that the records sought are protected by the patient-physician privilege. He further contended that the records relate to psychological treatment received by him and are not relevant or material since relator has not sued for such medical expenses and the treatment provided was not related to the injuries he sustained in the accident. He alleged finally that the attempt to attain the records is an intimidation and a harassment. Attached to the motion is an affidavit by

relator in which he states that the treatment in question relates to emotional problems and has nothing to do with his cause of action against Williamson.

A hearing was held on the motion for protective order. Relator contends that the hearing took only two minutes, that his counsel was not permitted to argue, that he was not permitted to testify and that the respondent, the Honorable Solomon Casseb, Jr., failed to even review the pleadings. The order, however, recites, in part:

> Counsel for Plaintiff and counsel for Defendant appeared on behalf of their respective parties and announced ready. After a hearing and review of the pleadings on file, the Plaintiff's Motion for Protective Order and the Plaintiff's Affidavit, the Court found that the Motion should be DENIED and that the depositions upon written questions of the custodian of medical records for Charter Real Hospital, Dr. Robert Jimenez, and Dr. Sam Sayegh, previously noticed on September 16, 1986, should be taken....

This mandamus proceeding followed. Relator asks us to order respondent to withdraw his order denying the protective order. No statement of facts from the hearing has been brought forward.

Relator's arguments are three-fold. He argues that the records sought are privileged communications pursuant to TEX.R. EVID. 509, "Physicians/Patient Privilege," and TEX.R.EVID. 510, "Confidentiality of Medical Health Information." He argues that the records sought are immaterial and irrelevant since they relate to marriage counseling and counseling for emotional problems unrelated to his cause of action against Williamson. Finally, relator argues that he was denied due process by respondent's arbitrary and peremptory denial of his motion in the "two minute" hearing.

Williamson, in his response, states that by his petition, answers to interrogatories, and deposition, relator has injected his physical, mental and emotional condition into the lawsuit. He sued for "loss of pleasure in life," for wages lost due to pain

which precluded him from "even thinking clearly," and for past, present and future medical expenses. Thus, evidence of relator's mental and emotional condition is relevant and reasonably calculated to lead to the discovery of admissible evidence. Williamson contends two exceptions to the general rule against non-disclosure of medical records apply. These exceptions are set out in TEX.R.EVID. 509(d)(4) ("In any litigation ... if relevant, brought by the patient ... if the patient is attempting to recover monetary damages for any physical or mental condition....") and TEX.R. EVID. 510(d)(5) ("A communication or record relevant to an issue of the physical, mental or emotional condition of a patient in any proceeding in which he relies upon the condition as an element of his claim or defense....").

Williamson argues that the records are further relevant for impeachment purposes since they may shed light on relator's reason for leaving his job—whether it was just for pain, or whether he was dismissed for mental or emotional problems. Williamson contends relator's credibility is also at issue because he stated in his deposition that he saw Dr. Sayegh for throat and ear problems, while he now contends that he saw the doctor for mental and emotional problems.

Williamson also argues that relator has waived any complaint of the trial court's action because he failed to require an *in camera* inspection of the documents sought to be protected. Further, it is Williamson's contention that relator has failed in his burden of proof since he has produced no evidence of what the documents actually contain. All that is before the court is relator's affidavit that the documents relate to marriage counseling and emotional problems; the documents themselves are not before the court.

■ The procedure to be followed by a party seeking to exclude documents from discovery is set out in the recent cases of *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 57–59 (Tex.1986), and *Peeples v. Honorable Fourth Supreme Judicial Dis-*

*trict,* 701 S.W.2d 635, 637 (Tex.1985). The party who seeks to exclude documents from discovery has the burden of proof. He also has the affirmative duty to specifically plead the particular privilege, to request a hearing on his motion, and to produce some evidence supporting the claim. The trial court should then determine whether an *in camera* inspection is necessary. If such inspection is ordered, those materials for which the inspection is sought must be segregated and produced to the court. Failure to follow this procedure constitutes a waiver of any complaint of the trial court's action.

■ Relator specifically pleaded the patient-physician privilege, requested a hearing and produced his affidavit in support of his claim. Relator failed, however, to offer the documents to the trial court for an *in camera* inspection.

. Under certain circumstances, such as when relevancy or harassment is the basis for protection, affidavits or live testimony may be sufficient proof. When, however, the claim for protection is based on a specific privilege, ... the documents themselves may constitute the only evidence substantiating the claim of privilege.

*Weisel Enterprises, supra* at 58–59. While relator's affidavit may have been some evidence of the document's irrelevancy, there is simply no way in the present case for the respondent to determine, without examining the documents, whether the treatment received by relator relates to an element of his claim. Having failed to tender the documents to the court and request an *in camera* inspection, relator has waived any complaint regarding the respondent's action.

■ Relator argued that to tender the documents for an *in camera* inspection would waive the privilege. Relator cites *Jordan v. Court of Appeals for the Fourth Supreme Judicial District,* 701 S.W.2d 644 (Tex.1985), but that case involved disclosure of the documents to a grand jury. It is distinguishable from a case in which the documents are tendered

to the trial judge for an *in camera* inspection. Such a tender does not waive the privilege. In fact, the very purpose of the tender is to prevent disclosure of privileged, or otherwise non-discoverable information. *See Maresca v. Marks,* 362 S.W.2d 299, 301 (Tex.1962).

■ While we strongly disapprove of the trial court's apparent action in curtailing the hearing, the order recites that a hearing took place and that the court reviewed the pleadings on file, the motion for protective order and relator's affidavit. We cannot go beyond the recitals in the judgment on the strength of relator's affidavit alone. *See Leuer v. Smith,* 335 S.W.2d 775, 777 (Tex.Civ.App.—San Antonio 1960, no writ).

The petition for writ of mandamus is denied.

CANTU, Justice, concurring.

I agree that the writ of mandamus should be denied because relator waived any right to complain of the trial court's action by failing to comply with the procedure set out in *Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 57–59 (Tex.1986), and *Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985).

Relator admits that she was not prepared to produce any of the exhibits for inspection by the trial court. This should suffice as reason to deny the writ.

I am, however, troubled by the allegation in relator's petition that she was not accorded the benefit of a meaningful hearing by the trial court. Such a contention, if true, reflects a violation of the most basic of due process guarantees and deserves more serious consideration than the cursory treatment given it by the majority opinion.

The allegations in the petition are that the trial court refused to permit argument or evidence and that it further made its ruling within a period of two minutes without benefit of reviewing the pleadings. If such was the case, I can conceive of no greater showing of an abuse of discretion,

without regard to whether the end result was correct.

Respondent's sworn answer does not deny relator's allegations but merely alleges that the petition for injunction (second motion for protective order) was set for a hearing and was denied.

In mandamus proceedings an answer neither admitting nor denying a fact is an admission of that fact. *Giraud v. Winslow*, 127 S.W. 1180 (Tex.Civ.App.—1910), *rev'd on other grounds*, 104 Tex. 318, 137 S.W. 917 (1911).

The order sought to be set aside by relator recites that a hearing was held and that a review of the pleadings on file preceded the ruling by the Court.

The majority invokes the rule that the recitals in a judgment are conclusive and cannot be contradicted on the basis of relator's affidavit alone. *See Leuer v. Smith*, 335 S.W.2d 775 (Tex.Civ.App.—San Antonio 1960, no writ).

However, such a rule is of general application when an attack upon the judgment is collateral. *See generally*, 48 Tex.Jur.3d *Judgments*, § 332 *et seq* (1986).

As recognized by the majority, the instant proceeding was brought exclusively for the purpose of setting aside the order entered below by the trial court. It has been said that a direct attack on a judgment is an attempt to correct, reform, vacate or nullify it in a proceeding instituted for that purpose either in the court which pronounced the judgment or in some higher court. *See* cases collated under footnote 1, 48 Tex.Jur.3d *Judgments*, § 166 (1986) (at p. 15).

Although a procedure seeking mandamus may take the form of either a collateral attack or a direct attack, *Garcia v. State*, 290 S.W.2d 555 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.); *Ham v. Garvey*, 155 S.W.2d 976 (Tex.Civ.App.—San Antonio 1941, no writ), it is clear that the instant proceeding is in the nature of a direct attack. For that reason alone the majority should not resort to the rule concerning the conclusiveness of judgments.

As the allegations in relator's petition were not contradicted and because the rule of conclusiveness is not applicable to a proceeding in the nature of a direct attack I would not suggest, however indirect, that a petitioner seeking to vacate an order of a lower tribunal will always be foreclosed by a rule set in concrete.

In the case before us it is sufficient that relator concedes she did not show entitlement to the writ. However, for the foregoing reasons, I disassociate myself from any reference in the majority opinion which purports to foreclose a challenge based upon alleged due process violations simply because a rule, not without criticism, *see Norwood v. Cobb*, 24 Tex. 551 (1859), has long held to do so upon public policy considerations. *See Treadway v. Eastburn*, 57 Tex. 209 (1882).

I concur in the denial of the writ of mandamus for the reasons expressed.