Delivered February 17, 1891.

———

JOHN J. FOWLER ET AL. v. FRENCH SIMPSON.

No. 3004.

**1. Pedigree — Hearsay.** — The rule of admission of hearsay in evidence of pedigree is restricted to the declarations of deceased persons who were related by blood or marriage to the person.  The testimony of a plaintiff suing as heir of his father after his death was competent evidence to his father's declarations touching the land in litigation, and his claim that "he was the surviving brother and only heir of Sam and John Fowler" was competent testimony.

**2. Service of Citation by Publication—Recitals.—**The judgment against unknown heirs recited: "Plaintiff appeared by attorney, and the defendants, though duly cited by publication according to law, which citation was returned into this court prior to the September Term, A. D. 1883, came not but made default," etc.  The citation returned August 29, 1883, showed that citation was served by publishing it for four consecutive weeks previous to the return day.  Judgment was rendered 18th March, 1884, in favor of Simpson for the interest of heirs of John Fowler, being one-half of the land.  *Held:*

1.  The judgment identifying the return of the officer making the service as the evidence upon which it acted, the recitation of *due service* is not conclusive, but is corrected by the record.

2. As publication for four weeks was insufficient the judgment was inoperative. Rev. Stats., art. 1246.

3. **Case Discussed and Adhered to.** — Treadway v. Eastburn, 57 Texas, 209, discussed and adhered to.

4. **Tenant Attorning to Another.** — The defendant obtained possession upon which he based claim of title to the land under limitation for five years by obtaining the attornment to him by a tenant then in possession under the adverse claimant. *Held*, that the method by which he attempted to acquire the actual possession of the land can not be held to have had the intended effect.

5. **Same—Cases Adhered to.**—Flanagan v. Pearson, 61 Texas, 305, and Juneman v. Franklin, 67 Texas, 415, adhered to.

6. **Same—Descent upon Death of Landlord.**—It can make no difference in the application of the rule as to the change of allegiance by the tenant that the title had descended to the heirs of his landlord upon his death, nor was the duty of the tenant changed from his not knowing the heirs upon whom the land descended.

7. **Tax Deed.**—A tax deed executed without the prerequisites of the law authorizing it does not pass the title of the delinquent to the purchaser, but such deed may be the basis of title by limitation of five years when describing the land, duly acknowledged and recorded.

APPEAL from Colorado. Tried below before Hon. Geo. McCormick.

Fowler and Haynes sued Simpson for two tracts of land of 640 acres each. Simpson pleaded not guilty and limitation of five years. The case was tried by the court without a jury. Plaintiffs recovered one-half interest in the land. Both parties appealed, and in their briefs each party attacks the judgment so far as adverse to them.

The opinion sufficiently gives the other facts.

*Foard, Thompson & Townsend,* for Simpson. — 1. Whilst it is true that in matters of relationship and pedigree hearsay evidence is competent to prove the parentage and descent of an individual, and the declarations of members of the family are allowed in evidence for this purpose, yet under the facts of this case the declarations of James Burton Fowler made at the time that he claimed to own the lands were not competent evidence to prove these facts as testified to by this plaintiff. Greenl. on Ev., secs. 103, 104, and cases cited.

2. In order to prescribe under the five years limitation it is only required to hold under a deed duly acknowledged and recorded, accompanied by possession and payment of taxes for the full period.

3. In considering the five years limitation the title conveyed by the deed is not to be examined into nor the authority under which it is made.

4. A party can prescribe under the limitation of five years under a deed made to him by a collector of taxes; and whether the collector had authority to make the sale or deed, or whether the party whose interest in the land is purported to be conveyed by the collector has any interest in the land, are matters which have no effect in determining the question of limitation. Wofford v. McKinna, 23 Texas, 36; Rev. Stats., arts. 3193, 3197, 3190.

*Adkins & Green,* for appellants John J. Fowler and Jerome B. Haynes.

1.   A void judgment can not be the basis of any right and will not support the statutes of limitation.

2.   Citations by publication are to be strictly construed, and a judgment of the District Court in a suit against unknown heirs, when service is attempted on the defendants by publication, is void for the want of jurisdiction of the court trying the case over the persons of the defendants when the record affirmatively shows that such citation was issued upon a ground not authorized by the statute.   Rev. Stats., art. 1236; Stegall v. Huff, 54 Texas, 193.

3.   Citations by publication in suits against unknown heirs are required by our statute to be published once in each week for eight successive weeks previous to the return day of such citation; and a judgment of the District Court in such cases based upon a citation by publication is void for the want of jurisdiction of the court trying the case over the persons of the defendants when the record affirmatively shows that publication was not had for the length of time required by law.   Rev. Stats., art. 1236, subdiv. 2; Collins v. Miller, 64 Texas, 118.

4.   In the case of Simpson against unknown heirs of Fowler, in which the judgment here complained of was rendered, the record affirmatively shows that the first publication of the citation was made on the 2d day of August, 1883, the judgment itself shows that it was returned on the 29th of August, 1883, and the judgement was rendered on the 18th day of March, 1884.

5.   A tenant in possession of premises can not by simply attorning to a third person become such third person's tenant for the purpose of holding the rented premises adversely to his landlord unless he repudiate his tenancy and give his landlord notice thereof.   Flanagan v. Pearson, 61 Texas, 302.

6.   One who receives possession of land from another as his landlord must openly repudiate his tenancy thus begun and give his landlord notice thereof before an attornment by him to a stranger will have the effect to constitute his possession adverse to his original landlord or operate as a disseizin.

HENRY, ASSOCIATE JUSTICE.—This was an action of trespass to try title.

The tract of land in controversy is composed of two contiguous surveys of 640 acres each, patented to Samuel Fowler.

The defendants pleaded not guilty and the statute of limitations of five years.

The cause was tried without a jury, and judgment was rendered for the plaintiffs for an undivided one-half interest in the land.   Both parties perfected appeals and assign errors.

The court filed the following conclusions of fact: "The court finds that the two tracts of 640 acres each were granted to one Samuel Fowler in July, 1841; that Samuel Fowler died in 1862, leaving as his sole heirs James Burton Fowler and John Fowler, two brothers of the said Samuel, and that John Fowler died in 1881, leaving as his sole heir at law his brother James Burton, who conveyed the land in controversy to the plaintiffs herein by deed dated May 28, 1889, and that this suit was instituted by them on the 7th day of September, 1889.

. "2.     Also that John Fowler was in possession of the land by his agent, one Kinchler, at the time of his death; that Kinchler resided on the land by virtue of and under a written contract dated August 15, 1879, in which he was to hold possession until the 1st day of January, 1884, as the agent or tenant of said John Fowler, and that in 1881 the said Kinchler, while still in the possession of the land, agreed to hold the same as the tenant of defendant, Simpson, and afterwards on the 10th day of March, 1884, executed and delivered to defendant, Simpson, a written instrument or acknowledgment of his tenancy, and that his wife now holds possession of the land as tenant under said agreement and by virtue thereof.

"3.     Also that the defendant, Simpson, purchased the 1280 acres at a tax sale made by Toliver, who was the State and county collector of taxes, by deeds dated in 1878 and 1879, and that the description of the land in said deeds was amended in a deed dated October 20, 1879, which deeds convey to Simpson the interest of John Fowler.

"4.     Also that Simpson recovered a judgment in the District Court of Colorado County at its March Term, in 1884, in a suit brought by him against the heirs of the said John Fowler; that the judgment recited that the defendants were duly cited but made default; that although the judgment contains that recital, the citation on file shows that the citation was only published for four consecutive weeks and the affidavit on file only states that the residence of the heirs is unknown.     The judgment is dated in March, 1884.

"5.     Also that defendant, Simpson, has paid the State and county taxes on the 1280 acres each year since and including the year 1879 to the present date."

The defendant, Simpson, as appellant, assigns as error a ruling of the court in permitting John J. Fowler, one of the plaintiffs, to testify to the declaration of his father, James Burton Fowler, that he was the surviving brother and only heir of Sam and John Fowler, made before he had conveyed the land to plaintiffs.

It is contended that the "declarations of James Burton Fowler made at the time he claimed to own the lands were not competent evidence." James Burton Fowler was dead when the testimony was given.

With regard to the admission of hearsay evidence in cases of pedigree Mr. Greenleaf says that the law resorts to it "upon the ground of the

interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family. * * * The rule of admission is therefore restricted to the declarations of deceased persons who were related by blood or marriage to the person, and therefore in the succession in question." The evidence was proper.

The court's conclusions of law embraced the following: "Under the judgment the court holds that defendant, Simpson, acquired the entire interest of John Fowler, deceased, in the two tracts, which was an undivided interest of one-half thereof in each tract. The court holds that the recitals in the judgment cured the defect in the citation and service, as decided by our Supreme Court in Treadway v. Eastburn, 57 Texas, 209."

Also that defendant had established his title under his plea of limitation to an undivided one-half interest in the two tracts.

In the above referred to case of Treadway v. Eastburn it was proposed to collaterally attack a judgment of a District Court of this State, rendered upon service by publication of the citation, on the ground of want of jurisdiction of the court to render the judgment because the citation was not published for the time required by the law.

The opinion in that case shows that the writ of citation then in question was in the usual form and was dated July 24, 1866, and that the return of the sheriff thereon was as follows: "Came to hand July 30, 1866, and executed by publishing in the Paris Press, a newspaper published in the county of Lamar, State of Texas, for successive four weeks previous to return day, this the 25th day of July, 1866."

The opinion quotes the following recital from the final judgment: "This day came the plaintiff by his attorney, and the said defendant, Edward Eastburn, failed to appear and answer but wholly made default, although duly served with process."

The opinion in stating the law of the case says: "If the uncontradicted recitals in the record show affirmatively that the court did not have jurisdiction over the subject matter or that the jurisdiction over the person did not attach, then a presumption to the contrary will not be indulged. Otherwise the presumption in favor of the jurisdiction of the court would prevail in every case, and the mere rendition of the judgment would of itself import absolute verity. To thus hold in cases where the record shows affirmatively want of jurisdiction would itself impeach the record, and thus violate the very rule sought to be invoked, that the record can not in a collateral proceeding be contradicted. To determine, however, whether the record shows affirmatively that there has been proper service the whole of it should be taken together.

"When thus considered if that portion which relates to this question shows affirmatively such character of service as is not authorized by law, or such defective service that a judgment by default rendered thereon

would be void and not voidable only, and the remainder of the record is silent upon this subject, not showing any finding of the court from which it may be inferred that there was other service or an appearance, then this would be a case in which it affirmatively appears that the jurisdiction of the court had not attached.

"If, however, other parts of the record, and particularly the judgment, which is the final act of the court, entered upon full examination and consideration of all the necessary facts, should, as in the case now before us, recite the due service of process or other facts which would give the court jurisdiction of the person, then this would be a case in which it would affirmatively appear that the jurisdiction had in fact attached, and the general rule would apply that in a collateral proceeding this recital in the record imports absolute verity."

The record preceding the final judgment in the case of Simpson against the unknown heirs of John Fowler, as introduced in evidence on the trial of this cause, among others, shows the following facts: On the 1st day of August, 1883, the plaintiff filed his original petition, and on the same day made affidavit "that the *residence* of the defendants" was unknown to him. Citation for publication was issued on the same day.

The law then in force required the affidavit to state "that the names of such heirs are unknown to the affiant" and that the citation should be published "once in each week for eight successive weeks previous to the return day of such citation." Rev. Stats., art. 1236.

The return of the officer showed that the writ came to his hands on the day that it was issued, and that it was executed by being published "once in each week for *four* consecutive weeks previous to return day hereof, the first publication being made on the 2d day of August, 1883, the second on the 9th day of August, 1883, the third on the 16th day of August, 1883, the fourth on the 23d day of August, 1883." The officer's return of the citation bore the date "*the 29th day of August, 1883.*"

The judgment was rendered on the 18th day of March, 1884, and among others contained the following recitals:

"Plaintiff appeared by attorney, and the defendants, though duly cited by publication according to law, which citation was returned into this court prior to the September Term, A. D. 1883, came not, but made default. * * * Plaintiff introduced the citation by publication with the return thereon executed according to law and returned *on the 29th August, 1883.*"

In the case of Treadway v. Eastburn, 57 Texas, 214, it is further said, quoting from 34 California Reports, 408:

"If the affidavit of the printer states that the summons was published one month and yet the court in its judgment states that it was published three or that the service had been had upon the defendant, it will be

*presumed* that other proof than that contained in the judgment roll was made, for not so to presume would be to deny to the record that absolute verity which must be accorded to it."

Herein lies, we think, a material distinction between the judgment in the Treadway v. Eastburn case and the one in Simpson v. Fowler. In the former the judgment entry itself contained no recital showing on what evidence its conclusion of lawful service of the writ was predicated, and in the absence in the judgment itself of any evidence on the subject a conclusive presumption was indulged in favor of the integrity of the judgment. "But such a presumption can be indulged only in the *absence* of proof and not *against* proof." Withers v. Patterson, 27 Texas, 491.

The judgment now in question identifies, by referring to its date, the return of the officer and the writ upon which the court's conclusion of lawful service of process was based. Instead of relying upon a presumption it points out the proof upon which its validity depends. It would be doing violence to the recitals of the judgment itself to doubt upon what evidence of the service of its process the court was acting.

The language of the judgment allows of no escape from the conclusion that the process was never lawfully served, wherefore the court was without jurisdiction and its judgment was a nullity.

While the case made by the defendant Simpson was in all other respects sufficient to give him title under the five years statute of limitations to at least as much of the land as the judgment awarded him, we are yet of the opinion that the method by which he attempted to acquire the actual possession of the land can not be held to have had the intended effect.

Kinchler was in possession of the land as the tenant of John Fowler. Without either surrendering the possession or notice to his landlord he agreed to become the tenant of Simpson and to hold the land for him.

In the case of Longfellow v. Longfellow, 54 Maine, 248, it is said: "The relation of landlord and tenant once established, the defendant, so long as that relation subsists, can not be suffered to allege title in himself or in any person other than him from whom he holds. He may show that the plaintiff's interest was but temporary and that it has expired, or that he has conveyed it away subsequent to the demise to some third person under whom defendant has commenced a fresh holding, or that the tenancy has been determined and that subsequently to the determination he has ceased to occupy the premises."

In Fuller v. Sweet, 30 Michigan, 241, the same doctrine is announced as follows: "It is very well settled that where a tenant is in under one title no attornment is valid which is made to any one not in privity with that title. The same principle invoked by plaintiffs to estop the defendant from denying the title under which he was possessed will prevent him from changing possession by any acknowledgment to a stranger not deriving title from the same source with that of the original landlord, and

that derivative title must be shown in order to validate the attornment and save the tenant and all claiming through him during the tenancy from liability to the first landlord."

This court said in the case of Flanagan v. Pearson, 61 Texas, 305: "It is urged that after the expiration of his term of lease, * * * the relation of landlord and tenant thus being terminated, the tenant might disclaim his landlord's title, retain possession, and attorn to Flanagan. We do not think that position maintainable."

And in the case of Juneman v. Frarklin, 67 Texas, 415, it was said by this court: "If Juneman wished to attorn to another and place himself in a position to dispute his landlord's title, it was his duty to first restore the latter to possession and place him in the same position as he was before the entry under the lease was made. He should have given up the advantage he derived from the tenancy by being let into possession in order to remove the estoppel to which he was subjected."

It can make no difference in the application of the rule that the landlord, John Fowler, died and the title had descended to his heirs. It is the title under which he entered that the estoppel upon the tenant relates to and not the individual ownership of the title. Nor did the fact that the heirs to whom the title had descended were unknown to him confer upon the tenant the right to attorn to a stranger. He should have either surrendered the possession or have held it until the appearance of the representative of the title under which he entered. If Simpson had by any means acquired the Fowler title it would have been different. He did not show title through his tax deeds or otherwise. A distinction must be recognized between a title to the property acquired under a tax sale, which may be done when the proper proceedings are taken, and simply a deed for the property made by a tax collector.

The former will exist when the methods of procedure directed by the law are shown to have been faithfully observed. A deed for the property sufficiently describing it, properly acknowledged and recorded, without the existence of any authority upon the part of the tax collector, may become the basis for the acquisition of a title under the five years statute of limitations.

The judgment will be reversed and here rendered in favor of the appellants who were plaintiffs in the District Court.

*Reversed and rendered.*

Delivered February 17, 1891.