Margaret O'BOYLE et al., Appellants,

v.

John R. BEVIL, Jr., et al., Appellees.

No. 17158.

United States Court of Appeals
Fifth Circuit.

Sept. 26, 1958.

Rehearing Denied Nov. 7, 1958.

R. F. Roberts, Hugh G. Freeland, Beaumont, Tex., for appellants.

B. F. Whitworth, Jasper, Tex., James F. Parker, James F. Parker, Jr., Beaumont, Tex., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This suit was filed in the district court as a proceeding in equity to remove as an alleged cloud upon plaintiffs' titles two Texas state court judgments, and to enjoin their enforcement by defendants. The state court judgments were obtained by John R. Bevil, Sr., the ancestor and predecessor in interest of the defendants in this case, against the plaintiffs in the instant case. Involved in this suit are the issues of whether plaintiffs alleged a title or interest in

the land in question in the state court suits sufficient to enable them to challenge those judgments and whether the judgments can be successfully attacked in this proceeding.

The case was tried after motion to dismiss, converted into motion for summary judgment, was denied. The court entered judgment for the defendants, concluding that the plaintiffs had no right, title or interest in the lands involved in the state court judgments and further that such judgments were not fraudulently obtained; plaintiffs had not been deprived of due process of law; the judgments appearing valid on their face import absolute verity and could not be set aside; and the four year Texas statute of limitations [1] was a bar to every cause of action asserted by plaintiffs. From this judgment plaintiffs have appealed.

Before discussing the propriety of the district court's orders and judgment it will be necessary to review the allegations, facts and posture of the parties in some detail.

Prior to 1919 John R. Bevil, Sr., the ancestor of the present defendants, and W. D. Myers owned in common the lands known as the Joel E. Hawley League, situated in Hardin County, Texas. By a partition deed of September 11, 1919, in evidence in this case, Bevil and Myers divided the League with Bevil obtaining title to the north 2325.5 varas, measured out to some 2049 acres.

On September 22, 1924, John R. Bevil, Sr. executed a deed to Texas Little Farms Co., an Ohio corporation, stating a cash consideration of $10,000. The deed described the land conveyed as follows:

"Being Seven Hundred and ten (710) acres of land out of the north half of the Joel E. Hawley League hereinafter described by Lot Number according to the map of a subdivision of the said Joe E. Hawley League, of record in Vol. 22, page 92 of the Deed Records of Hardin County, Texas, to which reference is hereby made." [2]

Then followed a naming by number of the specific lots conveyed. The specific map referred to in the deed and recorded in the Deed Records of Hardin County, Texas, does not show a lot bearing each number contained in the deeds. The subdivision is divided into lots with number one in the northeast corner, number two adjacent to number one to the west and the numbers continuing in order to number 21 which is in the northwest corner of the plot. Number 22 is directly south of number 21 and the rest of the numbered lots continue east and west alternately through the plot. In approximately the center of the plot there is a large area of land shown on the map which is not subdivided into lots and not numbered. But the numbering sequence on the recorded map is interrupted in such a way that this plot could be divided into equal sized lots and numbered perfectly to fit in with the other numbered lots if the same pattern and sequence of numbering is followed. For example, in the fourth row of lots from the north the blank space is bounded by lot 66 on the west and 78 on the east, allowing the 11 missing numbers to be placed in the unnumbered area with each lot of a size equal to the remaining lots. This method of supplying the missing numbers can be accomplished in each row of the plot, with the result that the total area would then consist of numbered lots in the proper sequence. A picture of this recorded plat is annexed in order to make clearer our description of it.

---

1. Art. 5529, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 5529.

2. Two other deeds from Bevil to Texas Little Farms Co. are also in evidence, reciting as consideration vendor's lien notes for $8,965.00 and $9,035.00, respectively, with the property described in the same manner as the above deed. These three deeds together conveyed acreage totaling substantially all the tract owned by Bevil.

During 1924–1925 John R. Bevil, Sr. executed releases to Texas Little Farms Co. for recited considerations totaling $18,000. Thus, by the deeds and releases in evidence Bevil purportedly conveyed for $28,000 practically the entire 2325.5 north varas of the Hawley League which he had acquired, to Texas Little Farms Co.

Plaintiffs allegedly derive their title from deeds to them individually from Texas Little Farms Co. An example of the total descriptive part of the grant is as follows:

"* * * the following Real Estate situated in the County of Hardin in the State of Texas and in the

. . . . of . . . . and bounded and described as follows:

"Being tract Number Sixty-seven (67) of the G.M.B. Hawley Subdivision of the Joel E. Hawley League, as recorded in Vol. 22, page 92 of the Deed Records of Hardin County, Texas."

As mentioned above, the plat on the specific page of the Deed Records of Hardin County does not show lots with numbers corresponding to those in plaintiffs' deeds. For instance, as to the above described lot there is no lot "Number Sixty-seven (67)," although there is a lot 66 and an unnumbered area immediately adjacent to it.

John R. Bevil, Sr., in 1945, instituted two suits to quiet title in the District Court of Hardin County, Texas, naming as defendants most of the plaintiffs in the instant suit and praying for an adjudication of title in plaintiff. The land in issue was the tract shown on the plat as not containing numbered lots. Since the defendants were all nonresidents, process was obtained by publication under Art. 2039, Texas Rules of Civil Procedure, Rule 109 as it then read.[3] None of the defendants. appeared, and proceedings were held and judgments rendered against them.[4]

The transcript of the state suit No. 8399, in evidence in the case at bar, shows that the petition was filed June 27, 1945, but the affidavit for citation by publication was sworn to June 25, 1945.

The transcript of suit No. 8471 reveals that the affidavit for citation by publication was sworn to one day before it was filed. The appearance day specified in the citation was January 14, 1946, yet counsel was appointed to represent the nonresident defendants on January 7, 1946, and judgment was rendered and entered against them the same day, seven days before appearance day. In neither suit did Bevil introduce into evidence the purported deeds from him to Texas Little Farms Co. or the deeds from Texas Little Farms Co. to the nonresident defendants. These were the very conveyances which created the cloud on Bevil's title and which it was the purpose of the suits to clear up.

The record in this case makes perfectly plain, therefore, that Bevil sold land in 1923 for some $28,000 by descriptions taken from a plat recorded in the land records of Hardin County; that in 1945 he sought to set aside the same conveyances as to some one-third of the total on the basis that the descriptions he had used were inadequate to identify the land; he made this move against nonresident defendants who were served by publication only and in proceedings as to which there were procedural defects leading up to the state court judgments; and in presenting his case to the court he did not either plead or introduce in evidence the very deeds which created the alleged clouds on his title which the suits were brought to remove; on such

---

3. Rule 109: "Where a party to a suit, his agent or attorney, shall make oath *when the suit is instituted* or at *any time during its progress*, that any party defendant therein is a non-resident of the State, or that he is absent from the State, or that he is a transient person, or that his residence is unknown to affiant, the clerk shall issue a citation for such defendant for service by publication." (Italics added.)

4. Texas law provided for this situation as follows:
   Rule 800, Texas Rules of Civil Procedure:
   "Proof Ex Parte
   "If the defendant has been cited only by publication, and fails to appear and answer by himself, or by attorney of his own selection, or if any defendant, having answered, fails to appear by himself or attorney when the case is called for trial on its merits, the plaintiff shall make such proof as will entitle him prima facie to recover, whereupon the proper judgment shall be entered."
   Rule 812:
   "No Judgment by Default.
   "No judgment by default shall be taken in such case, but the facts entitling the plaintiff to judgment shall be exhibited to the court on the trial; and a statement of facts shall be filed as provided by law and these rules in suits against nonresidents of this State where no appearance has been made by them."

a deficient showing of the true facts the court entered these judgments; the judgments were obtained, of course, without any actual notice to the defendants.

This suit is brought to nullify the effect of these state court judgments. The judgments are attacked on the basis of the procedural defects leading up to the judgments under the Texas law authorizing service upon nonresidents by publication and on the ground of fraud. The fraud asserted is that the defendants, in presenting their case to the state court, withheld knowledge of the conveyances from Bevil to Texas Little Farms Co. and to the plaintiff here.

█ A suit presenting such a state of facts must appeal strongly to the sense of justice of any tribunal. Was the judgment dismissing the suit caused by error which calls for its reversal here? We conclude that it was. Reliance, in sustaining the trial court's dismissal of the suit, is first placed by the defendants on the proposition that the plaintiffs have no standing to attack the state court judgments, however vulnerable they may be, because they failed to allege and prove an interest in the land litigated over in these suits. Such was the conclusion of the trial court. We deal first with this question, for undoubtedly a party must show that he has a justiciable interest in the subject matter in order to maintain litigation thereabout. Hollar v. Jowers, Tex.Civ. App., 310 S.W.2d 721; City of Waco v. Akard, Tex.Civ.App., 252 S.W.2d 496; Yett v. Cook, 115 Tex. 205, 281 S.W. 837; 39 Am.Jur. 860, Sect. 10.

The question then is: did the appellants allege and prove in the trial court an interest in the subject matter of the state court suits sufficient to give them the standing to bring this action to set aside the state court judgments?

█ Appellees contend, and the trial court agreed, that the deeds under which appellants claim title to their respective lots were void for lack of adequate description of any land described in the state court suits. We think the trial court did not and neither do we reach this issue. The appellants need not show here any more than they had a justiciable interest in the subject matter of the litigation; that is that they had a colorable claim to the land that was then before the court. We do not need to decide that appellants have good title to these tracts and we do not do so. We decide only that their allegations and proof entitle them to ask a court to look into their claim that the judgments were void. Appellants have alleged and proved that they hold deeds describing lots purporting to lie within the tract which appellees described in their two state court suits. If these deeds had been introduced in evidence in the state court suits the court could then have decided whether they were sufficient on their face to identify tracts on the ground covered by the Bevil claims, but they were not introduced in evidence, and, of course, no opportunity was afforded appellants to undertake to offer proof to resolve any ambiguities, if any there were, because they were not aware of the suits at all. We find, on careful examination of the record, that at least as between Bevil and those holding under him appellants' claims of title to parcels of land within that set out in the state court suits was more than a colorable one; that a court having all the deeds, releases, records, surveys and testimony as to common understanding of the numbering of the lots in the Hawley subdivision might well have construed the deed to each of the appellants as conveying specific lots within the unnumbered area marked "Lot A." That is all we need decide in order to hold that appellants alleged and proved a justiciable interest in the subject matter of the state lawsuits.

█ We next come to the merits of the attack on the two judgments. Questions as to the setting aside of judgments are difficult at best. This difficulty is increased when attack is made in a federal court on a state court judgment. There is one principle, however, that stands out clearly in this area of

controversy. That is that in diversity cases, a federal court may set aside a state court judgment for equitable grounds that are recognized by the state as a basis for such action.[5] When, as is true in Texas, a judgment can be set aside for want of jurisdiction or for fraud, the federal court, exercising its equity jurisdiction, can act similarly in a diversity case.

■ It is not disputed that the record in both the state court cases discloses procedural errors. In No. 8399 the petition was filed June 27, 1945. In order to obtain an order for service by publication the plaintiff must "make oath *when the suit is instituted* or *any time during its progress,*" that the defendant *is* a nonresident. Here such affidavit was made two days before the suit was filed. Obviously this is not a compliance with the statute, which is designed to require an oath that during the pendency of the action the defendant is a nonresident. An affidavit to that effect at any time before the filing of the suit clearly throws no light on the fact of residence *when the suit is instituted* or thereafter.

■■ In No. 8471 the affidavit was made one day before the suit was filed, but there was also in that case a much more glaring defect. The court's order for publication made the appearance day January 14, 1946; this appearance day was, of course, published in the newspa-per notice to the defendants. Yet the record discloses that on January 7, 1946, seven days before the return day, the case was disposed of by the entry of judgment against the defendants.

Under Texas law it is clear that a judgment entered before the return day is void. Davenport v. Rutledge, Tex.Civ. App., 187 S.W. 988, 989; Sneed v. Box, Tex.Civ.App., 166 S.W.2d 951. This would appear to resolve the question as to the second judgment. Moreover, as to the failure of the plaintiffs to make oath at the time prescribed in the statute, the Davenport case says:

"The statutes relating to citation by publication are not liberally interpreted, but strictly construed, and a strict compliance with the essential requirements of the statute is required."

We think that this is but the expression of the same principle announced in the old case of Galpin v. Page, 18 Wall. 350, 85 U.S. 350, 21 L.Ed. 959.[6]

We do not, of course, question the constitutionality of a state statute for service by publication for nonresidents in an in rem proceeding. However, unless such statutes meet the minimum standards of due process, they cannot stand. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 658, 94 L.Ed. 865. We do note, as said in the opinion in that case, "It would be idle to pretend that publica-

---

5. Cf. Dulien Steel Products Co. v. Connell, 5 Cir., 252 F.2d 556, in which relief was denied because under the Louisiana Code, the Louisiana courts could not grant the relief sought.

6. Since the sufficiency of notice by publication on a nonresident must, in the end, be measured by the requirements of due process, this language from Galpin v. Page is significant:

"* * * The statute provides, in case of absent and non-resident defendants, for constructive service of process by publication. It requires an order of the court or judge before such publication can be made; it designates the facts which must exist to authorize the order, the manner in which such facts must be made to appear, the period for which publication must be established. These provisions, as already stated, must be strictly pursued, for the statute is in derogation of the common law. And the order, which is the sole authority for the publication, and which by statute must prescribe the period and designate the paper in which the publication is to be made, should appear in the record with proof of compliance with its directions, unless its absence is supplied by proper averment. If there is any different course of decision in the State it could hardly be expected that it would be followed by a Federal court, so as to cut off the right of a citizen of another State from showing that the provisions of law, by which judgment has been obtained against him, have never been pursued."

tion alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts." This fact has inevitably led the courts to exact strict compliance with provisions of statutes for service on nonresidents by publication. Galpin v. Page, supra; Butler v. McKey, 9 Cir., 138 F.2d 373, certiorari denied 321 U.S. 780, 64 S.Ct. 636, 88 L.Ed. 1073; Harlan v. Sparks, 10 Cir., 125 F.2d 502. This accords with the Texas view. See Davenport v. Rutledge, supra; Harris v. Hill, 54 Tex.Civ.App. 437, 117 S.W. 907. Durst v. Park, Tex.Civ.App., 177 S.W.2d 301, does not hold contrary to this view, since there was a stipulation in that case as to the truth on the date suit was filed of the fact sworn to one day before.

We conclude, therefore, that the failure of the plaintiffs to follow the statute, which required the making of the oath as to nonresidents *during the pendency of the suits* vitiated the entire proceedings, since there could be no legal citation and publication absent a legal affidavit.

■ But, say the defendants, the recitals of the state court judgment that the defendants were "duly and legally cited by publication" import absolute verity and may not be shown, even by the record, to be wrong. Appellees rely strongly on Williams v. Hays, 77 Tex. 283, 13 S.W. 1029, and Bemis v. Bayou Development Company, 184 S.W.2d 645, a Texas Civil Appeals case. These cases state in the broadest terms that recitals of a judgment that service has been legally perfected may not be impeached by other parts of the record belying that fact. A study of the many Texas cases shows that this rule is not uniformly applied. In Fowler v. Simpson, 79 Tex. 611, 15 S.W. 682, the Supreme Court of Texas noted this exception to the rule: where the finding of the judgment pointed specifically to the basic fact, i. e., the citation itself, to support the finding, that fact is available on an attack on the judgment to disprove the finding. This exception was broadened in Lutcher v. Allen, 43 Tex. Civ.App. 102, 95 S.W. 572. It is not clear exactly what the law of Texas is where there is a finding of due and legal citation by publication, and an effort is made to prove, not that there was any defect in either the form or fact of the citation or the publication (which was the source of complaint in many of the Texas cases), but that there was an anterior defect, i. e., the absence of a valid affidavit. Whatever would be the view of the Texas courts, we think that constitutional requirements of due process require a holding by any court, state or federal, that no such principles of lifting oneself by his own bootstraps can prevent it, in case of a nonresident defendant, from inquiring into any facts disclosed by the record. But for the rule of absolute verity we have found that the record in these two cases discloses that appellants are denied due process if the judgments are allowed to stand in spite of the procedural defects. Is it any less a denial of due process to hold that a court may by its own fiat declare that requirements were met which the record discloses were not in fact met? We think not. See Lutcher v. Allen, supra, especially judgment on rehearing, 95 S.W. 572, 576. Although that case deals with a personal judgment, much of the reasoning is applicable here. See also Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22. It follows, therefore, that as to a nonresident defendant the rule of absolute verity cannot be imposed to prevent an inquiry into the record facts showing that nonresident service was not legally obtained.

This rule of importing absolute verity would, of course, be no bar to the attack on the judgment in case No. 8471 in any event, because the undisputed fact that that judgment was entered seven days before the return day is not in conflict with any finding of the trial court, since none was made with respect to that matter.

The appellants made an equally determined attack on the two judgments

on the ground that the failure of the plaintiff to plead or prove in his suit of trespass to try title, the very deeds he had given to Texas Little Farms Co. and which they had given to appellants amounted in law to a fraud on the court and on the appellants, entitling them to a judgment setting them aside.

■ In determining whether the filing of a suit to clear title without setting out the deeds the plaintiff himself had given, and which constituted the cloud from which he sought relief, can be the basis of an action to set aside the judgments, we find that the Texas courts have long held that intentional misleading actions that result in the withholding of an issue from the court that, but for such actions, the other party would present to the court, may be the basis of a suit to set aside a judgment for fraud. See Davis v. Terry, 33 Tex. 426; Mills v. Baird, Tex.Civ.App., 147 S.W.2d 312. See full discussion also in Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 1001, where it is stated:

"Only extrinsic fraud will entitle a complainant to relief because it is a wrong act committed 'by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial * * *. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert' [quoting from State v. Wright, Tex.Civ.App., 56 S. W.2d 950, 952]."

■ Considerations which impose a burden on a plaintiff in a suit against a nonresident to follow strictly the statutory requirements to obtain service by publication likewise impose a heavier burden on parties and courts to insure that the anticipated absence of such a defendant through his ignorance of the pendency of the action, coupled with the knowing failure of the plaintiff to present all facts relevant to the issue to be decided, does not prevent the absent defendant from having his case fairly outlined and litigated. The inescapable conclusion is that, knowing the defendant would not have any knowledge that his title was under attack, the plaintiff was required in good faith to the court and in order to afford the due process to which the defendants were entitled, to give to the court evidence to the effect that he himself had already purported to convey to others and ultimately to these defendants tracts of land as to which a colorable claim could be, and has now been, made that they were the same land for which his actions were filed. The plaintiffs' withholding from the court's consideration of the deeds and the interpreting evidence contained in releases he subsequently executed amounted to legal fraud of the type that may be availed of by appellants to set aside the judgments. There are no intervening equities, as the present defendants took from Bevil by descent.

The facts as to the omission of the information are not in dispute. The legal effect is clear. Equity could do no less than to prevent the appellees from using such judgments to their advantage.

■ There is no merit to the appellees' contention that this action by appellants is barred by the four year statute of limitations. The bar of the statute in an action to set aside a judgment for fraud in Texas does not commence to run until the plaintiff knows of the judgment, or in the exercise of due care ought to know of the judgment against him, Levy v. Roper, 113 Tex. 356, 256 S.W. 251. Harrison v. Orr, Tex.Com. App., 10 S.W.2d 381. "Manifestly, the burden of proving that essential fact was upon Harrison [the party pleading the statutory bar] unless through evidence produced in his own behalf Orr [the party sought to be barred] proved it for him." Harrison v. Orr, Tex.Com. App., 296 S.W. 871, 873. Here appellees made no attempt to prove that appellants knew or ought to have known of the judgments against them more than four years before the suit was filed. In their complaint appellants alleged to the con-

trary and this allegation was neither admitted nor denied by appellees in their answer. The burden was thus on them to prove the defense, which they did not do.

The judgment of the trial court is reversed. The two Texas state court judgments described as follows: John R. Bevil v. A. L. Chivers et al., suit No. 8399, District Court of Hardin County, Texas; John R. Bevil v. W. S. Johnson et al., suit No. 8471, District Court of Hardin County, Texas, are void and they are set aside. The case is remanded to the trial court for the entering of such further equitable relief as is appropriate in light of this opinion and judgment.

CAMERON, Circuit Judge, (specially concurring).

In concurring with the able and articulate opinion of the majority written by Judge TUTTLE, I feel constrained to set down a few remarks about jurisdiction. To my mind, the fundamental error of the court below is contained in its fourth conclusion of law reading thus:

"This suit constitutes a collateral attack on the two State Court final judgements [sic] since each of such judgements is valid on its face such judgements import absolute verity and cannot be set aside or vacated in this proceeding."

That statement is expressive of views held by a great many people arising doubtless from the fact that it is not difficult to become so enamored of the shibboleths and the nomenclature of the judicial process as to lose sight of its realities and basic functions.

But I do not conceive that the Judiciary is invested with any such absolute power or that its edicts can be considered as possessed of such infallibility. On the other hand, it is my conviction that any court of competent jurisdiction, either state or federal, can adjudge the merits of any suit involving the validity of a final judgment of any other court, state or federal, where the basis for the attack is that the court rendering the questioned judgment did not have jurisdiction to render it, or that such judgment was procured by fraud. These are the grounds of the attack against the two state court judgments here.

This Court is, in my opinion, committed to this principle, Bass v. Hoagland, 5 Cir., 1949, 172 F.2d 205.[1] Hoagland sued Bass in the United States District Court for the Eastern District of Texas upon a judgment he had obtained in the United States District Court in Kansas. The judgment recited all of the facts necessary to show jurisdiction of the court and validity of the judgment. The attack of Bass sought to go behind the recitals of the judgment and to show facts which destroyed the right of the Kansas Court to enter the judgment which it had entered. Answering the argument that the court must limit itself, where charges similar to those made here are involved, to the language of the judgment, the opinion states (at pages 208–210):

"It is also well settled law that its [the judgment's] express recitals import verity; and where the judgment is silent, if the court rendering it is one of record and of general jurisdiction, * * * all presumptions are in favor of its regularity. It is equally well settled that such presumptions may be overcome and that recitals as to things proper to be shown in the record on which the judgment rests may be overborne by reference to that record. It is also settled that a suit on a judgment, being a mode of enforcing it, does not open it to direct attack, and that any attack is collateral. * * *

* * * * * *

" * * * The answer says there was no evidence heard at all, and this is admitted for the present, and an admitted fact may be used on collateral attack as well as the

1. Opinion by Judge Sibley, Judge Hutcheson dissenting.

record itself; 49 C.J.S. Judgments, §§ 421, 425 Note 34. The court reporter's record would show the actual truth. * * * The judgment states the plaintiff was not present at the trial, but only his counsel; and that no defendant was present in person or by counsel, so there could have been no waiver of any right. Bass, living in Texas, did not know that the case had been called for trial till he was served in the present suit. This does not look like due process of law under the Constitution, nor even like a judicial trial. Bass' want of diligence in not sooner finding out what had become of his case is not questioned here, but the constitutional validity of this judgment under the admitted facts. Strong ground has been taken by the Supreme Court, and in strong language, against treating cases as in default which were not so. In Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, * * * On page 43 [should be 413–414 of 167 U.S., on page 843 of 17 S.Ct.] it is said: 'The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have an inherent power to deny all right to defend an action and to render decrees without any hearing whatever is in the very nature of things to convert the court exercising such authority into an instrument of wrong and oppression, and hence to strip it of the attribute of justice upon which the exercise of judicial power necessarily depends.' "

Throughout the complaint in the case before us the state court judgments are attacked on the ground that procedural due process was not observed in their rendition.[2] Appellees rely on the two judgments as a defense against the attack of appellants. Procedural due process required that all provisions of the Texas statutes concerning process, pleadings and proof should be observed if the judgments are to have validity in the support of their title.

In Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, the Supreme Court denied enforcement in the District of Columbia of a judgment rendered by a New York State Court because of the failure of the litigant relying upon the judgment to show observance of the requirements of New York statutes as to notice. Referring to several Supreme Court cases and to Restatement of Judgments, Par. 11, Comment C, the Supreme Court said (327 U.S. at pages 228–229, 66 S.Ct. at page 560):

"A judgment obtained in violation of procedural due process is not entitled to full faith and credit when sued upon in another jurisdiction * * * Moreover, due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process."[3]

2. The proceedings are attacked in detail on the grounds that plaintiff's pleadings in the state court did not follow Texas statutes requiring that a plaintiff plead his title link by link and to plead the interest of the defendant as well as the description of the land by tract numbers; they are attacked, as the opinion of Judge Tuttle points out, for want of evidence necessary to make out plaintiff's case as well as for defects in the effort at constructive service by publication.

3. See also Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859;

Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; Davis v. Wechsler, 1923, 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143; United Shoe Machinery Co. v. United States, 1922, 258 U.S. 451, 452, 42 S.Ct. 363, 66 L.Ed. 708; Ward v. Board of County Commissioners of Love County, Oklahoma, 1920, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; Postal Telegraph Cable Co. v. City of Newport, 1918, 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215; Bigelow v. Old Dominion Copper Mining & Smelting Co., 1912, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009, and 30 A American Jurisprudence, Judgments, §§ 880 et seq.

In White v. Union Producing Co., 5 Cir., 1944, 140 F.2d 176, at page 178, we stated:

> "Fraud vitiates everything it touches, it is difficult to define; there is no absolute rule as to what facts constitute fraud; and the law does not provide one 'lest knavish ingenuity may avoid it.'"

A judgment obtained by fraud is a nullity. To establish the fraud as well as the want of jurisdiction to render the judgment for failure to observe the requirements of the state statutes, the court in which the judgment is brought in question may consider the entire record in the case, pleadings, process and evidence, and may, in proper cases, consider extrinsic evidence.[4]

The case before us presents a typical example where equity will intervene to insure that appellants are condemned only after hearing and that the whole proceeding will be invested with "the attribute of justice upon which the exercise of judicial power necessarily depends."

HUTCHESON, Chief Judge (dissenting).

Of the opinion that under settled law the effort in this suit constitutes a collateral attack on judgments which, containing plain jurisdictional recitals and no recital contrary thereto, must be accorded absolute verity and are, therefore, not subject to collateral attack,[1] I dissent from the opinion and decision of the majority.

The rule here relied on is thus correctly stated in Bemis v. Bayou Development Co., Tex.Civ.App., 184 S.W.2d 645, at page 648:

> "In other words, this court fails to join the appellant in finding any fundamental error apparent upon the face of the foreclosure-judgment, but contrarily, is constrained to hold that its given recitals, as against the collateral attack herein made thereon, imported absolute verity to the extent that the pleadings, the citation, and other court papers appertaining thereto, cannot be looked to for any contradiction thereof, and that, in consequence, this controversy ends there; such is the law of Texas, as is made manifest by these authorities: Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092; Levy v. Roper, 113 Tex. 356, 256 S.W. 251; Brown v. Clippinger, 113 Tex. 364, 256 S.W. 254; Hopkins v. Cain, 105 Tex. 591, 143 S.W. 1145; Martin v. Burns, 80 Tex. 676, 16 S.W. 1072; Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151; Pure Oil Co. v. Reece, 124 Tex. 476, 78 S.W.2d 932; Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865; Wixom v. Bowers, Tex.Civ.App., 152 S.W.2d 896, writ refused for want of merit; Switzer v. Smith, Tex.Com.App., 300 S.W. 31, 68 A.L.R. 377 et seq.; Treadway v. Eastburn, 57 Tex. 209; Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325."[2]

This does not mean that I am of the opinion that the judgment appealed from should be affirmed throughout. Quite to the contrary, I think it should be affirmed only to the extent that it holds that this is a collateral attack on the judgments

---

4. Simon v. Southern Railway Co., 1915, 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; 30 A American Jurisprudence, Judgments, §§ 783–808; and see also ib. §§ 657, 855, 878–879.

1. Of the uniform multitude of cases to that effect, these, some of which are suits by publication, may be cited: Wixom v. Bowers, Tex.Civ.App., 152 S.W. 2d 896 at page 900; Hartel v. Dishman, 135 Tex. 600, 145 S.W.2d 865; Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151, at pages 158–159.

2. See also Mills v. Baird, Tex.Civ.App., 147 S.W.2d 312; State v. Wright, Tex. Civ.App., 56 S.W.2d 950, 952, and Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, for a full statement and discussion of the controlling law, not only in Texas but generally, on collateral attack and extrinsic and intrinsic fraud.

and therefore cannot be maintained and that it should be reversed as to all other features of the judgment, with the result that, while the right of plaintiffs to seek relief in this collateral proceeding is denied, their right to attack the judgments directly in the court which entered them would not be prejudiced or in any way affected hereby. Cf. Kelley v. Wright, Tex.Civ.App., 184 S.W.2d 649, where a bill to review a judgment brought in the same court which had theretofore entered it was entertained. Indeed, I agree with the statement on page 511 of 259 F.2d in the opinion of the majority:

"Appellees contend, and the trial court agreed, that the deeds under which appellants claim title to their respective lots were void for lack of adequate description of any land described in the state court suits. We think the trial court did not and neither do we reach this issue. The appellants need not show here any more than that they had a justiciable interest in the subject matter of the litigation; that is that they had a colorable claim to the land that was then before the court. We do not need to decide that appellants have good title to these tracts and we do not do so. We decide only that their allegations and proof entitle them to ask a court to look into their claim that the judgments were void."

In addition, however, to our fundamental differences on the question of collateral attack, I regard as in direct contradiction of the law as established in Texas, Durst v. Park, Tex.Civ.App., 177 S.W.2d 301, and dissent from the conclusion of the court that the judgment in No. 8399 was made void by the fact that the affidavit for publication was filed two days before the filing of the suit.

Other holdings of the court from which I dissent as in complete contradiction of the statutes of Texas and the decisions thereunder are: (1) that there was a violation of the Texas statutes in the failure of the plaintiffs in their petition in the publication suits to plead their titles specifically; (2) that their failure to introduce in evidence or otherwise bring up for adjudication in the publication suits the validity vel non and the effect of the instruments, the existence of which had caused them to institute the suits, constituted fraud requiring the setting aside of the judgments.

As clearly appears in the statutes and rules, the requirement for pleading title specifically, though at one time existing, had been repealed long before the suits here involved were brought. The applicable statutes and rules governing publication suits specifically provide that plaintiffs are required only to show a prima facie title and no decision in Texas has ever held, nor under the law could hold, that the failure to offer evidence as to the defendants' claim of title constituted fraud.

I respectfully dissent from the opinion and judgment.

Rehearing denied: HUTCHESON, Chief Judge, dissenting.