Arnold **ERNELL** et al., Appellants,

v.

Clyde O'FIEL et vir, Appellees.

No. 7050.

Court of Civil Appeals of Texas.

Beaumont.

May 8, 1969.

Rehearing Denied June 5, 1969.

Adams & Brown, Beaumont, for appellant.

D. H. O'Fiel, Beaumont, for appellee.

KEITH, Justice.

Appellee, plaintiff below, recovered judgment for title and possession to the land in controversy in a non-jury trial. Defendant is the residuary legatee of Arnold Ernell, who, at all times material hereto, was a resident of the State of Michigan. The parties will be designated as they appeared in the trial court.

Plaintiff's title rests upon a sheriff's deed executed pursuant to a judgment foreclosing a tax lien on the property involved. The tax suit, instituted on May 9, 1940, sought the recovery of delinquent school taxes upon Ernell's lands and the citation way by publication.

The deed into Ernell, recorded in 1916, showed his residence to be in the "County of Marquette and State of Michigan." It is undisputed in the record that Ernell did in fact live in the same house in Marquette County, Michigan from 1912 until his death in 1959.

The petition in the tax suit designated the parties as follows:

"* * * Arnold Ernell, the unknown heirs and legal representatives of Arnold Ernell, and all persons, including corporations * * * [etc.] * * * and all of the unknown owners of said property and premises, and the legal representatives of such unknown owners, hereinafter called defendants * * *"

This pleading was verified by the school district's attorney by a general affidavit dated April 29, 1940. In the body of the petition, supported by the general affidavit mentioned, this allegation is found:

"That the present ownar [sic] or owners of the property are unknown to plaintiff, and that plaintifv [sic] has caused a dilligent [sic] search of the records to

be made procuring information and data *q*s [sic] to the names, identity and location of necessary *o*arties [sic], and that in procuring such information and causing such investigation to be made plaintiff has incurred an e*s*pense [sic] of $5.00 in this cause, and that same is reasonable and was a necessary expense under the circumstances."

On the date of the filing of the petition, May 9, 1940, the school district's attorney made and filed another affidavit wherein this language was included:

"* * * that the residence of the defendant named in the petition is unknown to him, and the names and residence of any and all unknown owners are unknown to him."

No process issued at the time of the filing of the suit and it lay dormant until Jefferson County intervened therein on December 16, 1941, asserting its claim for delinquent taxes on the same land. Counsel for the County, at that time, made and filed his affidavit wherein he swore that "the residence of the defendant is unknown to affiant" and prayed for the issuance of citation for service by publication.

Citation duly issued on December 16, 1941, addressed to "Arnold Ernell, the unknown heirs and legal representatives", etc., as described in the quotation in paragraph four hereof. The process required the appearance "at or before 10 o'clock A.M. of the first Monday next after expiration of forty-two days from the date of the issuance of this citation, same being the 2nd day of February, A.D. 1942 * *" It was duly published four times, and returned with proper proof of publication.

On April 11, 1942, judgment was entered and recited upon the face thereof that the parties defendant (as heretofore described) had "been duly cited by publication upon a proper affidavit having been filed by plaintiff." The judgment also recited that an attorney having "been previously appointed by the court to represent said parties so cited by publication, appeared and announced ready for trial" along with the other parties to the proceeding. The judgment confirmed the legal levy of taxes due, the non-payment thereof, gave judgment for the taxing agencies, and ordered the foreclosure of the tax liens so established.

Our record shows that the order of sale of the property issued on August 17, 1942, was published in a form and manner not attacked by appellant, and the sheriff's deed into plaintiff's predecessor in title was regularly executed on October 6, 1942 and filed for record on October 30, 1942. The deed into plaintiff here, although dated July 5, 1957, was not filed for record until January 19, 1968. This suit was instituted on January 23, 1964. There is no showing of any other events during the period leading up to this suit other than the death of Ernell in 1959 and the subsequent probate proceedings on his estate.

In the present suit, in addition to the plea of not guilty, defendant affirmatively pleaded the fact that plaintiff's title rested upon the proceedings in the tax suit and that Ernell's residence was either known or could have been learned with reasonable diligence. Challenging the sufficiency of the affidavits of counsel dated May 9, 1940, and December 16, 1941, but ignoring the general affidavit to the petition, defendant contended that the same were "invalid and void and cannot form the basis of citation by publication." Further, the use of the "simulated process" was an effort to take Ernell's property "in violation of due process of law and equal protection of the law and the right to have notice and a hearing", etc. Complaining specifically of the affidavit of May 9, defendant contended that "such affidavit is invalid, ineffectual, does not comply with the law, does not comply with the law at that time, does not evidence any effort to locate the owner of the property Arnold Ernell", etc.

Plaintiff, by several special exceptions, challenged the tendered defenses as being

"improper, immaterial and irre*velent* [sic] and if true, would have no bearing upon the issue joined and for further reason, all of said allegations are an apparent attempt to make a collateral attack upon a valid judgment as rendered by the District Court and upon which plaintiffs' title is based * * *"

The judgment in *this* case recites that the exceptions, having been presented, were carried along with the case with the understanding that "the court would make its ruling upon same at the conclusion of all the evidence." No formal order on the exceptions is found on the record, but upon the final page of the statement of facts, the Court commented upon the fact that the attack made by defendant was "collateral" and announced that judgment for the plaintiff would be entered.

Defendant brings forward several points challenging the sufficiency of the several affidavits, the validity of the service of process in the tax suit, and contends that the judgment therein was void. We have reviewed these points and do not agree that the judgment was void; consequently, in view of the determination of the nature of the attack, we do not find it necessary to discuss each point separately.

One of the more troublesome questions in this case arises from the nature of the attack made by the defendant upon the judgment in the tax suit. Interposed as a defense in the trespass to try title suit was the asserted invalidity of the judgment in the tax suit. In the seventy four years since its pronouncement, our courts have been unable to improve upon the distinction between a direct and a collateral attack upon a judgment as enunciated in Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327 (1895) from which we quote:

"*A direct attack* on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of same in a proceeding instituted for that purpose, such as a motion for a rehearing, an appeal, some form of writ of error, a bill of review, an injunction to restrain its execution, etc. *A collateral attack* on a judgment is an attempt to avoid its binding force in a proceeding not instituted for one of the purposes aforesaid as where, in an action of debt on a judgment, defendant attempts to deny the fact of indebtedness, or where, in a suit to try the title to property, a judgment is offered as a link in the chain of title, and the adverse party attempts to avoid its effect, etc. * * *" (Emphasis supplied)

■ Clearly, the attack on the judgment in the tax suit made here is collateral, not direct, and we note in passing that the tax suit was in the 60th District Court of Jefferson County, Texas, whereas this suit was in the 58th District Court of Jefferson County. See: Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092, 1096 (1935) and Hodges, Collateral Attacks on Judgments, 41 Texas Law Review 163, 176 (1962) and cases therein cited.

Defendant cites O'Boyle v. Bevil, 259 F.2d 506 (5th Cir., 1958), and quotes at length therefrom. The cited case is by a divided panel of the Court with the Texas member, the distinguished Judge Hutcheson, dissenting on the substantive aspect thereof. Plaintiff, accepting the challenge, urges us to distinguish *O'Boyle* should we find the majority opinion therein applicable in any manner to the facts of this cause.

*O'Boyle,* now more than ten years of age, originating in a Federal Court in Texas and purporting to enunciate Texas law, has a unique distinction: it has not been mentioned by a single state court in Texas during its existence.[1] The case has been con-

---

1. Judge Sarah T. Hughes of the Federal District bench in Dallas, however, in Falsetti v. Indiana Oil Purchasing Co., 215 F.Supp. 420, 425 (DC ND Tex., 1963), did mention *O'Boyle* as supporting the proposition that in a direct attack, a judgment can be set aside for fraud, not a novel position under the Texas cases.

sidered carefully since defendant contends that it is controlling here. In our opinion, *O'Boyle* is not in accord with the well-established rules of law stated in many cases by our Supreme Court, only a few of which are cited herein. The attack in *O'Boyle* and that made here was collateral, not direct, and under our view of Texas law, defendant cannot prevail.

In a Texas case remarkably similar to *O'Boyle,* no mention was made of the Federal decision: See, Donaldson v. First State Bank of Abernathy, 352 S.W.2d 302 (Amarillo Tex.Civ.App., 1961, error ref. n. r. e.). An examination of the briefs in *Donaldson* indicates that the appellants therein relied almost exclusively upon *O'Boyle* for a reversal of the trial court's judgment. This is understandable since the similarity between the fact structure of the two cases is close. The carefully written opinion in *Donaldson* studiously avoids citation of *O'Boyle,* causing counsel in the motion for rehearing to complain: "We are amazed by the failure of the Court in its opinion to even mention the case of O'Boyle v. Bevil, * * *."

An examination of the application for writ of error and reply thereto in *Donaldson* likewise shows the *O'Boyle* case was brought to the attention of our Supreme Court without avail. The application was "Refused. No Reversible Error."

*Rule 483,* governing orders on applications for writs of error, when considering the *Donaldson* case, gives us little help on our problem, reading:

"In all cases where the Supreme Court is not satisfied that the opinion of the Court of Civil Appeals in all respects has correctly declared the law, but is of the opinion that the application presents no error which requires reversal, the Court will deny the application, with the notation 'Refused. No Reversible Error.' * * *"

See in this connection, Appellate Procedure in Texas, § 22.9, p. 22–13, by Chief Justice Calvert; Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117, 120 (1959); Texas Osage Cooperative Royalty Pool v. Clark, 159 Tex. 441, 322 S.W.2d 506, 507 (1959); Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815, 816 (1959).

However, a careful study of the opinion of the Amarillo Court in *Donaldson* (along with our review of the briefs and the application for the writ of error with the reply thereto) convinces us that the rule of law governing collateral attack upon judgments has not been changed, at least in the Courts of the State of Texas, the majority opinion in *O'Boyle* to the contrary notwithstanding. So concluding, our problems in this case are greatly simplified.

■ The reason for the rule has been set out by Judge Denman in Crawford v. McDonald, supra (33 S.W. at p. 328):

"* * * where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors the record that the judgment was rendered without any service whatever upon him. Logically, the judgment is, in fact, void but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore, for all practical purposes, in such collateral attack, the judgment is held valid."

To this we would add the impressive list of citations found in Professor Hodges' second installment of Collateral Attacks on Judgments, 41 Texas Law Review 499, 532, 533 (1963). And, in speaking of the effect

of the recitations in the judgment, Hodges says:

"So it is accurate to say, as to Texas law, that the recitations do control all else, unless a lack of jurisdiction is shown in the judgment itself, despite the recitation. This is true of recitations as to personal service or service by publication in proceedings in rem."

An examination of the cases cited in support of the text shows that this is, indeed, the law of our state.[2]

The attack which defendant makes upon the judgment in the tax suit, if not already answered by the cases discussed heretofore, is disposed of by this language from Empire Gas & Fuel Co. v. Albright, 126 Tex. 485, 87 S.W.2d 1092, 1096 (1935):

"Those objections [to the process] would be good in a direct attack upon the judgment in the court which pronounced it or in a higher court, upon appeal, writ of error, or certiorari. * * * (citing cases) * * * But where judgments are collaterally assailed their jurisdictional recitals are not open to attack but import absolute verity. * * * (citing cases) * * *" (Bracketed matter inserted).

The recent opinion in McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706, 710 (1961), concerned primarily with procedural problems, is in harmony with the result which we reach here.

Defendant made a collateral, not direct, attack upon the judgment in the tax suit, and the trial court properly held for the plaintiff in our case. All of defendant's points have been considered, and finding no error in the proceedings below, the judgment is in all respects affirmed.

2. Professor Hodges also comments: "It is said that Texas is the only jurisdiction in the United States in which recitations of the judgment control the rest of the record in this last situation [when the rest of the record shows affirmatively a lack of jurisdiction]. It is quite clear that in Texas the recitations do so control." (Bracketed matter inserted). If Texas is to abandon its minority position, such should be done by the Supreme Court, not an intermediate court.